IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No.: _____ |
| HONEYWELL INTERNATIONAL INC. | : **JURY TRIAL DEMAND** |
| Defendant. | : |

## COMPLAINT

Plaintiff INEOS Fluor Americas LLC ("INEOS"), by and through its undersigned attorneys, demands a trial by jury on all issues so triable and, for its Complaint against defendant Honeywell International Inc. ("Honeywell"), upon knowledge as to its own acts, and upon information and belief as to all other matters, alleges as follows:

### NATURE OF THE ACTION

1.  This action concerns Honeywell's repudiation and breach of a long-term supply contract for the sale of goods. Honeywell agreed to supply INEOS with the bulk of its North American requirements of anhydrous hydrogen fluoride ("HF") pursuant to a March 2004 supply agreement executed between INEOS and Honeywell (the "HF Agreement").

2.  In mid-December 2005 Honeywell notified INEOS that it was unilaterally raising the price of HF to INEOS by over 40 percent, an increase more than 10 times that permitted under the maximum 4 percent annual price increase provisions of the HF Agreement. When INEOS resisted Honeywell's effort to impose this improper price increase, Honeywell responded

by repudiating its contract with INEOS. Honeywell threatened to cut off INEOS's supply of HF, a critical input for the business of INEOS, on January 31, 2006 if INEOS did not agree to accept delivery of HF at the increased price that Honeywell sought to impose on it, and continues to threaten to terminate its supply of HF to INEOS.

3. Honeywell has repudiated and breached the parties' contract by unilaterally raising prices above contract terms, threatening to cut off INEOS's contracted supply of HF and asserting that it does not recognize the contract between the parties as enforceable. INEOS has been damaged in its business and property by Honeywell's actions.

4. Honeywell's actions against INEOS are unlawful monopoly practices resulting from its monopolization of the North American market for the sale of HF. Honeywell is by far the largest North American supplier of HF.

5. During the negotiations leading to the HF Agreement, Honeywell had to bid against its only significant North American competitor for HF or face the loss of its largest customer, INEOS, and the significant market share associated with the supply of INEOS's North American HF requirements. On information and belief, after securing INEOS as a customer through the HF Agreement at the end of an intensive bidding process, Honeywell took steps to insulate itself from such competition by making itself the only viable North American supplier of HF.

6. On information and belief, Honeywell has entered into an agreement to purchase a substantial volume of the HF capacity of its only significant North American HF competitor. This step solidified Honeywell's monopoly position in the North American market for HF sales and essentially prevented major customers like INEOS from employing competitive bidding in the future. Now that it has solidified its position over the North American HF market, Honeywell has sought to exploit its position through anticompetitive price increases and other

conduct.

7. INEOS seeks in this action compensatory damages and related relief from Defendant for its breach of a contract between INEOS and Honeywell as well as damages from the competitive harm caused by Honeywell's monopoly practices, with such damages to be trebled pursuant to the provisions of Section 4 of the Clayton Antitrust Act.

## THE PARTIES

8. Plaintiff INEOS Fluor Americas L.L.C. is a limited liability company organized and existing under the laws of the State of Louisiana with a principal place of business at 4990B ICI Road, PO Box 30, St. Gabriel, Louisiana 70776.

9. Defendant Honeywell International Inc. is a corporation organized under the laws of Delaware with its corporate headquarters at 101 Columbia Road, Morristown, New Jersey 07962.

## JURISDICTION

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1337 and from the diversity of citizenship among the parties, 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000. This Court also has supplemental jurisdiction over state law issues pursuant to 28 U.S.C. § 1367 and the doctrine of pendent jurisdiction.

11. This Court has personal jurisdiction over the defendant because it is a Delaware corporation.

## VENUE

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)-(c) and 15 U.S.C. § 22.

## FACTUAL ALLEGATIONS

13. This action concerns Honeywell's repudiation and breach of a long-term supply contract for the sale of goods. Honeywell agreed to supply INEOS with the bulk of its North American requirements of anhydrous hydrogen fluoride ("HF") pursuant to a supply agreement executed between INEOS and Honeywell in March 2004 (the "HF Agreement").

14. INEOS and Honeywell, through their predecessors, have had a contractual HF supply relationship dating more than 15 years pursuant to an agreement effective as of November 30, 1989, and amended in 1999, 2002 and 2004 (the "1989 Contract"). At all times under the 1989 Contract, as amended, and the current HF Agreement, Honeywell has supplied at least 80 percent and up to 100 percent of INEOS's annual North American HF requirements.

15. In late 2003, INEOS and Honeywell began negotiating a new supply agreement. After extended negotiations, INEOS and Honeywell entered into the HF Agreement in March 2004 in which they agreed to the price, quantity, term, price adjustment mechanisms, payment terms, product specifications and choice of Delaware law provisions of their long-term contractual supply relationship. The HF Agreement was memorialized by a Heads of Agreement ("HOA") in which the parties agreed to the binding material terms of sale described above. INEOS and Honeywell agreed that any subsequent long-form contract would draw its material terms from the HOA.

16. Contemporaneously with the HOA, the parties executed the Third Amendment to the 1989 Contract ("Third Amendment") in which the parties stipulated that if they had not entered into a long-form agreement by July 1, 2004 "the Parties shall agree to be bound by the provisions of the executed Heads of Agreement."

17. The HF Agreement commits Honeywell to supplying a minimum of 80 percent of INEOS's annual HF requirements, estimated to be 27,500 short tons, and no more than approximately 34,000 short tons, for a five-year period running until June 30, 2009.

18. As of July 1, 2004, INEOS and Honeywell had not formalized a long-form contract to incorporate the terms of the HF Agreement. Honeywell repeatedly insisted that the long-form contract include terms that were inconsistent with the HOA.

19. Honeywell supplied HF to INEOS at the prices and terms provided for by the HF Agreement from July 2004 until January 2006, consistent with the HOA and the parties' stipulation in the Third Amendment.

## HONEYWELL'S IMPROPER CONDUCT

20. In December 2005, Honeywell notified INEOS that Honeywell's price of HF delivered to INEOS would rise to $1050 per short ton.

21. The adjusted base price provided for by the HF Agreement was $728 per short ton beginning January 1, 2005. Honeywell agreed in the HF Agreement to cap the annual increase in the price of HF to INEOS at 4 percent. Honeywell's proposed price increase was thus more than 10 times the maximum HF price increase Honeywell was permitted to impose pursuant to the price cap provisions of the HF Agreement. Honeywell has subsequently threatened to raise its price of HF even further.

22. Honeywell threatened to cut off INEOS's supply of HF when INEOS indicated that it expected Honeywell to abide by the terms of the HF Agreement. Honeywell continues to threaten to discontinue the supply of HF, a critical input to the business of INEOS.

23. Honeywell has repudiated the HF Agreement by denying that any contract exists between the parties.

## HONEYWELL'S ANTICOMPETITIVE CONDUCT

24. HF, also known as hydrofluoric acid, is a chemical produced from fluorspar and sulfuric acid used in a variety of industrial applications, including the manufacture of refrigerants.

25. HF is a relevant economic product market. There are no commercially reasonable substitutes for HF. Consumers of HF are unable to turn to other products in response to small but significant price increases.

26. North America is a relevant economic geographic market for the sale of HF. HF is a hazardous product that is costly and difficult to transport, and North American consumers of HF are unable to turn to suppliers outside North America in response to small but significant price increases.

27. Honeywell is by far the largest producer and seller of HF in North America.

28. Quimica Fluor of Mexico is the only other significant seller of HF in North America.

29. Honeywell accounts for more than 60 percent of the HF sold in North America.

30. Together, Honeywell and Quimica Fluor supply nearly all of the HF sold in North America.

31. Meaningful entry into the market for the sale of HF in North America would not

occur in the event of small but significant price increases.

32. During Honeywell's negotiations with INEOS in 2003-04, Quimica Fluor also sought to supply the HF requirements of INEOS. Because INEOS is the largest HF customer of Honeywell, the continued supply of INEOS's requirements was critical to maintaining Honeywell's market dominance in HF sales.

33. Honeywell agreed to the terms of the HF Agreement, including its price cap mechanism for HF inputs, in order to prevent Quimica Fluor from serving the primary requirements of INEOS.

34. On information and belief, after agreeing with INEOS in March 2004 to be bound by the HF Agreement and before issuing its ultimatum regarding the desired price increase, Honeywell secured an agreement with Quimica Fluor for the annual supply of an amount of HF to Honeywell comparable to the HF requirements of INEOS.

35. This agreement increased Honeywell's control over the North American HF market, and rendered Quimica Fluor unable to serve as an effective alternative supplier for major customers like INEOS. As a result of Honeywell's purchase agreement with Quimica Fluor, INEOS is no longer able to turn to Quimica Fluor as an alternative source for its primary North American HF requirements. By eliminating the ability of its competitor to serve major customers, Honeywell thereby insulated itself from the competitive pressures that caused it to negotiate the HF Agreement.

36. Honeywell's agreement with Quimica Fluor increased Honeywell's dominance in HF sales. Honeywell has attained market power and a monopoly position in the North American HF market.

37. Honeywell exploited its market power by seeking to impose a price increase on

INEOS in violation of the terms of its agreement with INEOS. Honeywell has similarly raised prices to other customers since locking up the only significant alternative source of North American HF supply.

## COUNT I

*(Repudiation and Breach of Contract, Anticipatory Breach of Contract)*

38. INEOS repeats and re-alleges each and every allegation contained in paragraphs 1 through 37 above.

39. Honeywell has repudiated its contract with INEOS by refusing to perform according to its material terms and denying the existence of an agreement with INEOS. In particular, Honeywell has repudiated its contract with INEOS by unilaterally increasing its price well beyond contract terms and by prospectively and actually refusing to deliver goods due under the contract. Honeywell's repudiation of the contract has substantially impaired the value of the contract to INEOS.

40. Honeywell's repudiation of its contract has unlawfully deprived INEOS of the benefit of its bargain for the long-term supply of the primary input for production of the primary product of INEOS Fluor.

41. Honeywell has failed to adequately assure INEOS of future performance under the terms of its contract with INEOS.

42. INEOS has been forced to cover its requirements of goods under the contract by purchasing such goods from Honeywell at Honeywell's extra-contractual price of $1050 per short ton because there are no alternative commercially adequate sources of supply available to INEOS.

43. Honeywell's repudiation of the contract has resulted in expectancy and incidental damages, and other expenses resulting from the breach.

44. Honeywell's repudiation of the contract threatens to result in consequential damages from INEOS's loss of sales, competitiveness and market position in the sale of HFC-based products, and other harms.

## COUNT II

### (*Breach of Covenant of Good Faith and Fair Dealing*)

45. INEOS repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 above.

46. Honeywell has a duty of good faith and fair dealing in its performance of the terms of its contract with INEOS and in implementing the long-form contract with INEOS contemplated by the HF Agreement.

47. Honeywell has breached its duty of good faith and fair dealing in its performance of the terms of its contract with INEOS by, *inter alia*, insisting on increasing its price of HF far beyond contract terms and refusing to supply HF to INEOS after January 31, 2006 unless INEOS paid its extra-contractual price.

48. Honeywell has breached its duty of good faith and fair dealing in discussions concerning a long-form contract by, *inter alia*, seeking to impose onerous terms upon INEOS, insisting upon inclusion of terms in the new agreement that are starkly inconsistent with the HF Agreement, and procuring a supply agreement with its competitor for the supply of a substantial quantity of HF, thereby eliminating INEOS's sole alternative source of adequate HF supply.

49. During its course of performance of the HF Agreement and discussions with

Defendant. INEOS relied on Honeywell's good faith and fair dealing to its detriment.

50.  Honeywell's breach of its duty of good faith and fair dealing has caused INEOS actual, expectancy, incidental and consequential damages.

## COUNT III

*(Monopolization of North American HF Market)*

51.  INEOS repeats and re-alleges each and every allegation contained in paragraphs 1 through 50 above.

52.  Honeywell is by far the largest supplier of HF in North America, with a market share of more than 60 percent.

53.  On information and belief, Honeywell has contracted with Quimica Fluor to increase its control over the North American market for the sale of HF and thereby to prevent major customers like INEOS from having any competitive alternative to Honeywell.

54.  Honeywell's large market share and purchasing agreement with Quimica Fluor give Honeywell market power and a monopoly position in North American market for the sale of HF.

55.  Honeywell's purchases of additional HF supply from Quimica Fluor and attempt to impose price increases above a competitive level are monopolistic practices in violation of Section 2 of the Sherman Antitrust Act.

56.  Honeywell's actions have harmed INEOS in its business and property.

## COUNT IV

*(Attempted Monopolization of North American HF Market)*

57.  INEOS repeats and re-alleges each and every allegation contained in paragraphs 1

through 56 above.

58. Honeywell is by far the largest supplier of HF in North America, with a market share of more than 60 percent.

59. Honeywell's agreement to control additional supply of HF through agreement with Quimica Fluor was made with the specific intent to acquire market power and a monopoly position in the North American market for the sale of HF.

60. Honeywell's actions have a dangerous probability of success in leading to market power and a monopoly position in the North American market for the sale of HF in violation of Section 2 of the Sherman Antitrust Act.

61. Honeywell's actions have harmed INEOS in its business and property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered that:

(a) Plaintiff has been injured by Defendant's wrongful conduct in breach of the contract between Plaintiff and Defendant, and as a result, Plaintiff has been harmed in its business. Plaintiff is entitled to expectancy, compensatory, incidental and consequential damages in an amount to be determined at trial.

(b) Plaintiff has been injured by Defendant's anticompetitive conduct. Plaintiff is entitled to its damages from such conduct, with such damages to be trebled pursuant to the provisions of Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

(c) Plaintiff is entitled to an award of the costs of this action and related attorney's fees pursuant to Section 4 of the Clayton Act.

(d) Plaintiff is entitled to such declaratory and injunctive relief as is proper to restore the status quo among the parties.

(e) Plaintiff is entitled to specific performance of the HF Agreement.

(f) Plaintiff is entitled to such additional relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by a jury.

YOUNG CONAWAY STARGATT & TAYLOR LLP

Dated: March 20, 2006

*C. Barr Flinn by Chad S.C. Stover*
C. Barr Flinn (No. 4092) [bflinn@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: 302-571-6600

-and-

Mark D. Alexander
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Tel: 860-275-8100

*Attorneys for Plaintiff*

JS 44 (Rev. 3/99)

**ORIGINAL**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
INEOS FLUOR AMERICAS LLC

**DEFENDANTS**
HONEYWELL INTERNATIONAL INC.

(b) County Of Residence Of First Listed Plaintiff:
(Except In U.S. Plaintiff Cases)

County Of Residence Of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) Attorneys (Firm Name, Address, And Telephone Number)
C. Barr Flinn (No. 4092)
Karen L. Pascale (No. 2093)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19899-0391
(302) 571-6670

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place An X In One Box For Plaintiff And One Box For Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in This State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**V. NATURE OF SUIT** (Place An X In One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL ROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 U.S.C. 881<br>☐ 630 Liquor Laws<br>☐ 640 R R & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl Ret Inc Security Act | ☐ 422 Appeal 28 U.S.C. 158<br>☐ 423 Withdrawal 28 U.S.C. 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 U.S.C. 7609 | ☐ 400 State Reapportionment<br>☒ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates, etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 U.S.C. 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence Habeas Corpus<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
15 U.S.C. § 2 et seq.
Brief description of action:
Injury sustained due to plaintiff's anticompetitive conduct; breach of contract

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐ YES ☐ NO   DEMAND $
Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions)   JUDGE:   DOCKET NUMBER:

DATE March 20, 2006   SIGNATURE OF ATTORNEY OF RECORD   *C. Barr Flinn by Chad S.C. Stover*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

DB02:5249444.1

900002.0003

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     (a)     **Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

       (b)     **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

       (c)     **Attorneys.** Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

V.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VII.     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __06   189-__

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___1___ COPIES OF AO FORM 85.

__MAR 2 0 2006__           _____[signature]_____
(Date forms issued)           (Signature of Party or their Representative)

_____Nick Serio_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action