IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS, LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>HONEYWELL INTERNATIONAL, INC.,<br><br>      Defendant. | :<br>:<br>:<br>:   C.A. No. 06-189-SLR<br>:<br>:<br>:<br>:<br>: |

## NOTICE OF SUBPOENA

TO:   C. Barr Flinn, Esquire
       Karen L. Pascale, Esquire
       Young Conaway Stargatt & Taylor, LLP
       The Brandywine Building
       1000 West Street, 17th Floor
       P.O. Box 391
       Wilmington, DE 19899-0391

PLEASE TAKE NOTICE that, pursuant to Rules 30, 34 and 45 of the Federal Rules of Civil Procedure, defendant Honeywell International, Inc. is serving the attached subpoena on Eric McLaughlin c/o Lucite International, seeking deposition testimony and the production of documents on the dates set forth therein.

PROCTOR HEYMAN LLP

*/s/ Patricia L. Enerio*

Kurt M. Heyman (# 3054)
E-mail: kheyman@proctorheyman.com
Patricia L. Enerio (# 3728)
E-mail: penerio@proctorheyman.com
1116 West Street
Wilmington, DE 19801
(302) 472-7300

Attorneys for Defendant
Honeywell International, Inc.

OF COUNSEL:

KIRKLAND & ELLIS LLP
Yosef J. Riemer
Gregory T. Heyman
153 East 53rd Street
New York, NY 10022
(212) 446-4800

-and-

Mark L. Kovner
Michael S. Becker
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005-5793
(202) 879-5000

Dated: February 14, 2007

≈AO88 (Rev. 12/06) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

| WESTERN | DISTRICT OF | TENNESSEE |

| INEOS FLUOR AMERICAS LLC | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| V. | |
| HONEYWELL INTERNATIONAL INC. | Case Number:[1] 06-189 SLR |
| | (District of Delaware) |

TO: Eric McLaughlin
c/o Lucite International
7275 Goodlett Farms Parkway
Cordova, TN 38016

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION Alpha Reporting Corporation, 236 Adams Avenue, Memphis, TN 38103 (The deposition will be videotaped and recorded stenographically.) | DATE AND TIME 3/30/2007 8:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
The documents listed on Attachment A.

| PLACE Alpha Reporting Corporation, 236 Adams Avenue, Memphis, TN 38103 | DATE AND TIME 3/13/2007 8:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Andrew Riggs Dunlap    ATTORNEY FOR DEFENDANT | 2/13/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew R. Dunlap  Kirkland & Ellis LLP  153 East 53rd Street, New York, NY 10022  (212) 446-4800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____      _____
                    DATE                                    SIGNATURE OF SERVER

                                                            _____
                                                            ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# ATTACHMENT A

## DEFINITIONS

1. "All" shall be construed to include the term "each," and "each" shall be construed to include the term "all."

2. "Any" as used herein includes the word "all," and the word "all" as used herein includes the word "any."

3. "Communication" or "communications" mean, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether written, oral or other means, including, but not limited to, electronic communications and electronic mail ("E-mail").

4. "Document" or "documents" is used in the broadest sense and in accordance with the Federal Rules of Civil Procedure. "Document" or "documents" include within its meaning, by way of example and not of limitation, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of any kind, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail. The term "document" or "documents" includes, without limitation, any original, draft and/or non-identical copy of any document identified, as well as any attachment to, enclosure

with, and/or document referenced by any document identified, and specifically encompasses all documents or communications recorded in electronic form or on a computer.

5. "Fluorspar business" means the development, production and sale of fluorspar products.

6. "Hardship provision" means any provision in a contract for the sale or purchase of florine-based chemicals or products (or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract.

7. "Heads of Agreement" means the document executed by Honeywell and INEOS contemporaneously with the Third Amendment to the HF Contract in March 2004.

8. "HF Contract" means the agreement for the supply of HF entered into by Allied-Signal Inc. and ICI Americas Inc. on November 30, 1989.

9. "HF" means hydrogen fluoride, also known as anhydrous hydrofluoric acid or hydrofluoric acid ("HFA").

10. "HFC" means hydrofluorocarbon.

11. "Honeywell" means Defendant Honeywell International Inc. and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

12. "Including" means including and without limitation.

13. "INEOS" means Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor

companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

14.     "Lucite" means Lucite International, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

15.     "Quimica Fluor" means Mexichem Fluor, S.A. de C.V., Quimica Fluor S.A. de C.V., and their employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

16.     "Reflect," "reflecting," "related to," "refer to," "relating to," and "referring to," mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting,

contradicting, or constituting (in whole or in part), as the context makes appropriate.

17. "Refrigerant business" means the development, production and sale of products used in the development, manufacture and operation of commercial and consumer cooling and refrigeration systems or products.

18. "Third Amendment to the HF Contract" means the amendment to the HF Contract executed by Honeywell and INEOS in March 2004.

19. The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

## INSTRUCTIONS

20. Each document is to be produced along with all non-identical drafts thereof in its entirety, without abbreviation or redaction.

21. All documents shall be produced in the order that they are kept in the usual course of business, and shall be produced in their original folders, binders, covers or containers, or photocopies thereof.

22. The source(s) or derivation of each document produced shall be specifically identified.

23. In the event that any document called for by these Requests or subsequent Requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by describing the nature of the document, including: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the subject matter(s) of the document; (iv) the nature of the privilege or immunity asserted; and (v) any additional facts on which you would base your claim of privilege or immunity.

24. In the event that any document called for by these Requests or subsequent

Requests has been destroyed or discarded, that document is to be identified by stating: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

25. If any portion of any document is responsive to any Request, the entire document shall be produced, including, but not limited to, all cover sheets, appendices, or attachments.

26. Any document that contains any notation, addition, insertion, or marking of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document.

27. All definitions set above are in addition to the defined words' standard meanings. If INEOS contends that it does not understand the definition of the term or phrase used in any discovery Request, respond to that portion of the Request that it does understand and explain what it is that it does not understand with regard to the remainder of the Request. If INEOS believes that a discovery Request is overbroad in part, respond to that portion of the Request that it does not consider overbroad and explain why the remainder is supposedly overbroad.

28. These Requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

29. If no document exists which is responsive to a particular request, please state that no such document exists.

**RELEVANT PERIOD**

30. Unless otherwise specified, documents are requested for the time period of January 1, 2003 to the present.

## REQUESTS FOR PRODUCTION

1. Documents sufficient to show the corporate structure of Lucite including all parent, subsidiary, and affiliated companies.

2. Documents sufficient to show Lucite's organizational and management structure, including without limitation organizational charts and job descriptions.

3. All documents relating to Lucite's or INEOS's strategic business or marketing plans, including without limitation Lucite's or INEOS's plans for those aspects of its business utilizing HF.

4. All documents relating to any Lucite or INEOS board of directors meetings, including without limitation presentations to the Board and meeting minutes.

5. All documents relating to Lucite's or INEOS's financial performance, including without limitation annual reports, securities disclosures, audited financial statements, and internal analyses and projections.

6. All documents relating to the HF Contract, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the HF Contract.

7. All documents relating to the Third Amendment to the HF Contract, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the Third Amendment to the HF Contract.

8. All documents relating to the Heads of Agreement, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the Heads of Agreement.

9. All documents, from any time, relating to any hardship provision in any contract involving Lucite or INEOS, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of such hardship provisions.

10. All documents relating to Lucite's or INEOS's efforts to acquire HF from any source, including without limitation documents and communications relating to (a) Lucite's or INEOS's actual or potential acquisition of HF from Honeywell, Solvay, Quimica Fluor, or any other person or entity; and (b) Lucite's or INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

11. All documents relating to Lucite's or INEOS's communications, whether written or oral, with any person, company, or entity regarding the supply or potential supply of HF to INEOS, including without limitation (a) offers or solicitations made to Lucite or INEOS for the sale of HF to INEOS; (b) Lucite's or INEOS's actual or potential acquisition of HF from any source; and (c) INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

12. All documents relating to Lucite's or INEOS's knowledge or awareness of actual or potential sources of HF, including without limitation all communications and documents relating to (a) any person or entity able to or offering supply HF to Lucite or INEOS or any other person or entity; and (b) any offers, discussions, communications, or (formal or informal) requests by any person or entity to Lucite or INEOS relating to the actual or potential supply of HF to Lucite or INEOS.

13. All documents relating to Lucite's or INEOS's use of HF, including without limitation (a) Lucite's or INEOS's volume requirements for HF; (b) Lucite's or INEOS's anticipated or actual costs for its HF purchases; (c) Lucite's or INEOS's anticipated and actual revenues from its HF-based businesses; (d) Lucite's or INEOS's potential or actual sources of HF; (e) Lucite's or INEOS's historic and prospective demand for HF; and (f) the prices of and customers for Lucite's or INEOS's HF-based products.

14. All documents relating to Lucite's or INEOS's communications with actual or potential HF producers regarding increased costs to produce HF and measures being taken to address these cost increases.

15. All documents relating to conduct by Honeywell that INEOS alleges monopolized

or attempted to monopolize the alleged relevant market.

16. All documents relating to INEOS's allegations that Honeywell has monopoly power, or a dangerous probability of acquiring monopoly power, in the alleged relevant market.

17. All documents relating to INEOS's allegation that entry into the alleged relevant market would not occur in response to a small but significant price increase, as alleged in Paragraph 31 of the Complaint.

18. All documents relating to competition in the sale of HF, including without limitation documents and communications relating to (a) HF production costs; (b) HF pricing; (c) potential and actual supply sources of HF; (d) transportation and shipping of HF; (e) the supply of HF; (f) buyers and sellers of HF; (g) HF market participants; (h) competition among HF producers; (i) regulatory concerns of HF producers or purchasers; and (k) market or industry shares in the alleged market for HF.

19. All documents relating to Lucite's or INEOS's analysis of increases in costs in the sale of HF, including, but not limited to, increased costs for fluorspar and other raw materials, energy costs, labor costs and transportation and shipping costs.

20. All documents relating to any analysis by Lucite or INEOS or any third party relating to competition, cost conditions, and market developments in the sale of fluorspar, HF, or refrigerants, including without limitation any such analysis by financial analysts, consulting firms or other third-party observers.

21. All documents relating to the costs of producing HF, including without limitation documents and communications relating to costs for (a) fluorspar; (b) other direct or indirect inputs into the production of HF; (c) energy; (d) labor; (e) transportation; and (f) shipping.

22. Documents sufficient to show, on a monthly basis, the price of HF in the marketplace.

23. All documents, from any time, relating to competition in the refrigerant business, including without limitation documents and communications relating to (a) competition between INEOS and Honeywell for the sale of refrigerants; (b) industry shares or shares of sales

in the refrigerant business; and (c) any analysis by INEOS or any third party relating to the refrigerant business.

24. All documents, from any time, relating to competition in the fluorspar business, including without limitation documents and communications relating to (a) industry shares or shares of sales in the sale of fluorspar; and (b) any analysis by Lucite or INEOS or any third party relating to the fluorspar business.

25. All documents relating to any actual or potential damages that INEOS has or alleges that is has suffered as a result of Honeywell's conduct, as alleged in INEOS's Complaint, including without limitation all documents and communications relating to the calculation or mitigation of any such damages.

26. To the extent not requested above, all calendars, personnel files, and documents relating to the subject matter of these Requests (including without limitation the HF Contract, the Third Amendment to the HF Contract, the Heads of Agreement, any hardship provision in any contract involving Lucite or INEOS at any time, Lucite's or INEOS's efforts to acquire HF from any source, Lucite's or INEOS's use of HF, competition in the sale of HF, the costs of producing HF, the market price of HF, competition in the refrigerant business, and competition in the fluorspar business) within the possession or control of those Lucite's or INEOS's employees or consultants identified on the parties' disclosures (a) Ron Coyle; (b) Sean Cunningham; (c) Joseph A. Cutroneo; (d) Tobias Hanneman; (e) Robert Learman; (d) Eric McLaughlin; (f) John Pacillo; (g) David Price; (h) Angela Tracy; (i) Kim Wall; (j) Ian Menzies; and (k) Tim King.

27. To the extent not requested above, all documents relating to the subject matter of INEOS's Complaint.

28. All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Quimica Fluor.

29. All documents relating to the negotiation, execution, performance or

interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Interdynamics, Inc.

33. All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and PPG Industries.

34. All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Dow Chemical.

35. All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Ineos Chlor Americas, Inc.

36. To the extent not covered by previous requests, all documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and any supplier of TCE.

37. To the extent not covered by previous requests, all documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and any supplier of HF.

# CERTIFICATE OF SERVICE

Patricia L. Enerio, Esquire, hereby certifies that on February 14, 2007, copies of the foregoing Notice of Subpoena were served upon counsel as listed below:

### VIA HAND DELIVERY

C. Barr Flinn, Esquire
Karen L. Pascale, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

### VIA FEDERAL EXPRESS

Richard S. Order, Esquire
Mark D. Alexander, Esquire
Axinn, Veltrop & Harkrider LLP
90 State House Square, 11th Floor
Hartford, CT 06103

_____
Patricia L. Enerio (# 3728)