## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

INEOS FLUOR AMERICAS LLC,     )
          )
    Plaintiff,     )
          )
   v.     )    Case No(s).: 06-189 (SLR)
          )
HONEYWELL INTERNATIONAL INC.,     )
          )
    Defendants.     )
          )

## DECLARATION OF ANDREW R. DUNLAP IN SUPPORT OF HONEYWELL'S MOTION TO COMPEL

**Andrew R. Dunlap** hereby declares as follows:

1.     I am a member of the law firm of Kirkland & Ellis LLP, attorneys for Honeywell International Inc. ("Honeywell"). I submit this declaration in support of Honeywell's Motion to Compel.

2.     True and accurate copies of the following documents are attached hereto as indicated:

Exhibit 1:    AHF, Heads of Agreement, Honeywell & Ineos Fluor, dated March 8, 2004 (HON 8180-82);

Exhibit 2:    Pacillo Dep., Mar. 9, 2007 (selected pages);

Exhibit 3:    Confidentiality Stipulation and Protective Order, Aug. 18, 2006;

Exhibit 4:    Letter from Andrew Dunlap to Richard Order (Apr. 23, 2007);

Exhibit 5:    Letter from Richard Order to Andrew Dunlap (Apr. 26, 2007);

Exhibit 6:    Honeywell's Second Req. for Produc. of Docs., Oct. 20, 2006

(Exhibit B omitted);

Exhibit A:    Supply and Purchase Agreement, Dec. 2, 2002

(INEOS 1757-62);

Exhibit 7:    Pl. Ineos Fluor Americas LLC's Resps. and Objections to Def.

Honeywell's Second Req. for Produc. of Docs., Nov. 20, 2006;

Exhibit 8:    Geosits Dep., Apr. 18, 2007 (selected pages);

Exhibit 9:    Honeywell's Third Set of Interrogs., Mar. 13, 2007

(exhibit omitted);

Exhibit 10:    Pl. Ineos Fluor Americas LLC's Resps. and Objections to Def.

Honeywell's Third Set of Interrogs., Apr. 16, 2007;

Exhibit 11:    *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717,

2007 WL 137152 (D. Del. 2007);

Exhibit 12:    *In re Subpoena Duces Tecum Served on Bell Commc'ns Research,*

*Inc.*, No. MA-85, 1997 WL 10919, (S.D.N.Y., Jan. 13, 1997);

Exhibit 13:    *Mike v. Dymon, Inc.*, No. 95-2405, 1996 WL 606362,

(D. Kan., Oct. 7, 1996);

Exhibit 14:    *Gardella v. Prodex Int'l, Inc.*, No. 06-CV-1821, 2007 WL 710289,

(E.D. Pa. Mar. 5, 2007);

Exhibit 15:    *Quadrant Epp USA, Inc., v. Menasha Corp.*, No. 06-356,

2007 WL 320286, (E.D. Pa. Jan. 29, 2007).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
**[New York, New York]**

_Andrew Riggs Dunlap_
Andrew R. Dunlap

## CERTIFICATE OF SERVICE

I, Jason A. Cincilla, Esquire, hereby certify that copies of

**DECLARATION OF ANDREW R. DUNLAP IN SUPPORT OF HONEYWELL'S**

**MOTION TO COMPEL** were served on May 11, 2007 as follows:

### BY HAND DELIVERY:

C. Barr Flinn, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899-0391

### BY FEDERAL EXPRESS:

Richard S. Order, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square, 11th Floor
Hartford, Connecticut 06103
rso@avhlaw.com

_____
Jason A. Cincilla (#4232)

# EXHIBIT 1

**Honeywell**

Honeywell
P.O. Box 1057
Morristown, NJ 07962-1057

AHF Supply
Heads of Agreement
Honeywell & Ineos Fluor
March 8, 2004

The following contract "heads" represents the basis upon which a full contractual
agreement is to be sought ("Agreement") between the business of Ineos Fluor Americas
LLC ("Ineos") and the Honeywell Chemicals operating business of Honeywell
International Inc. ("Honeywell") for the supply of AHF commencing July 1, 2004 and the
amendment of the existing supply agreement for AHF among the parties dated as of
November 30th, 1989 ("Current Supply Agreement"). The parties have been discussing
in good faith and the following reflects the agreed upon commercial structure and binding
terms as of October 9, 2003.

1.    **Term of Agreement**
The term of the Agreement will be five years beginning July 1, 2004 through June 30,
2009. The Agreement will have an evergreen provision allowing it to continue, unless
cancelled by either party upon not less than two-years prior written notice.

2.    **Supply Volume**
The Agreement is based on supplying a minimum of 80% of Ineos' Anhydrous
Hydrofluoric Acid ("AHF") requirement at St. Gabriel, LA estimated to be 25,000 MT
(27,500 short tons) per annum. Honeywell will cap its volume commitment at 31,000  *(34 K tons)*
MT per annum, unless agreed to by Honeywell in writing.   However, for 2004
Honeywell will continue to supply 100% of Ineos' requirements under the Current
Supply Agreement for the period January 1, 2004 to June 30, 2004 and under the
Agreement for the period July 1, 2004 through December 31, 2004. Demand is expected
to fluctuate. There is no minimum volume take or pay requirement other than the 100%
of total requirements for 2004 and 80% minimum requirements from January 1, 2005
through June 30, 2009.

3.    **Pricing**
The base pricing for AHF in railcars delivered to St. Gabriel will, subject to Section 4
below, be as follows:

- $775/short ton ($0.3875/lb.) beginning January 1, 2004; and
- $700/short ton ($0.3500/lb.) beginning January 1, 2005 through June 30th, 2009.

Simultaneously with the execution of this Heads the parties shall also execute an
amendment to the Current Supply Agreement which incorporates the price change set
forth in the first bullet point above.

4.    **Cost Adjustment**
The base price of the AHF under the Agreement will be cost adjusted semi-annually
beginning January 1, 2005 by changes to the actual fluorspar costs using the following
formula:

**PHF1 = PHF0 x [1 + .30 x (PFS1 − PFS0) / PFS0]**

Where:
| | | |
|---|---|---|
| PHF0 | = | AHF base price as outlined in Section 3 above (i.e., $700/short ton for 2005) |
| PHF1 | = | AHF price adjusted semi-annually beginning January 1, 2005 |
| PFS0 | = | Honeywell's average fluorspar price delivered to Geismar From January 1, 2003 through December 31, 2003 |
| PFS1 | = | Honeywell's average fluorspar price delivered to Geismar for the previous six months |

The above fluorspar adjustment will be subject to a maximum 4% per calendar year cap or floor on AHF pricing.

## 5. Price Protection

Beginning January 1, 2005 under the Agreement, if Ineos is offered a lower delivered price from a North American producer to supply AHF of similar quality for a minimum annual volume of 10,000 short tons and for a duration of at least one year, which price is lower than Honeywell's then current price by at least five percent, upon written evidence, Honeywell will either meet such competitive price, or release Ineos from its purchase obligations for a period of one year. The meet or release mechanism can only be invoked once per calendar year.

## 6. Most Favored Nations

During any twelve month period of the Agreement if Honeywell sells to a single customer at least 5,000 short tons of similar quality AHF for any twelve month period for the manufacture of HFC-134a at a price which when freight costs are added, results in a cost to such customer, that is lower than the delivered cost to Ineos, then Ineos shall receive the benefit of such lower price on all deliveries of AHF made while such lower price is in effect. Excluded from this provision are any AHF sales to affiliates with at least a 40% ownership by Honeywell.

## 7. Payment Terms

Payment terms under (i) the Agreement and (ii) under the Current Supply Agreement for the period January 1, 2004 through June 30, 2004, will be net 45 days from date of shipment. Ineos shall issue a check each Thursday in payment for all outstanding invoices which are due as of that date. Such weekly payments will be made in immediately available funds by a check sent by overnight courier for Friday delivery to Honeywell's bank.

## 8. Hardship

The final Agreement will include a standard hardship provision, the terms of which shall be negotiated and mutually agreeable to the parties.

CONFIDENTIAL

HON 0008181

**9.    Product Specifications**

The product specifications for AHF sold under this Heads of Agreement are shown in Attachment I.  The parties agree to meet and review current specifications that the parties are using, but in the interim the current production specifications will be the operative specifications for the Agreement.

**10.    Terms and Conditions**

The parties will use the Current Supply Agreement as the basis for negotiation of the Agreement. Additionally, the parties shall use best efforts to reach agreement on the final terms and conditions of the Agreement within three months of the execution of this Heads, which final Agreement will incorporate the terms of this heads of agreement.

**11.    Governing Law**

The terms of this Heads of Agreement as well as the subsequent contractual Agreement shall be governed by the laws of the State of Delaware without regard to its conflict of laws principals.

**AS WITNESS**, the hands of the duly authorized representatives of the parties on the date which appears on page 1.

For and behalf of

INEOS FLUOR AMERICAS LLC.

Name: _Bob Stearman_

Title: _PRESIDENT_

Date: _3/22/04_

For and behalf of

HONEYWELL INTERNATIONAL INC. through its Honeywell Chemicals Business

Name: _____  (BS)

Title: _Vice President & General Manager_

Date: _3/15/04_

CONFIDENTIAL

HON 0008182

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC, | : |
| Plaintiff, | : |
| v. | : |
| | : C.A. No. 06-189-SLR |
| HONEYWELL INTERNATIONAL INC., | : |
| Defendant. | : |

## CONFIDENTIALITY STIPULATION AND PROTECTIVE ORDER

WHEREAS certain information, documents and things of the parties subject to discovery or disclosure in this action may be claimed to be or contain trade secrets or other confidential commercial information (hereinafter collectively referred to as "Confidential Information"),

NOW, THEREFORE, in the interest of expediting discovery and trial of this action, it is hereby stipulated between the parties and ORDERED that:

1.      This Confidentiality Stipulation and Protective Order ("Protective Order" or "Order") shall apply to:

(a)      all pleadings, motions and related documents filed in this action;

(b)      all information, documents, and things obtained in or subject to discovery or disclosure in this action, including without limitation testimony adduced and documents or things marked as exhibits at depositions, at hearings, and at trial; and

(c)      all information, documents and things voluntarily transferred between the parties directly or by counsel in connection with this action.

The materials enumerated in sections (a), (b), and (c) of this paragraph are hereinafter collectively referred to as "Pleading and Discovery Materials."

2.    Pleading and Discovery Materials shall be marked with the appropriate confidentiality mark or stamp (the "Confidential Legend") and treated as follows:

(a)    Materials which are deemed by a party in good faith to contain Confidential Information of that party will be so identified and marked "Confidential" by that party (the "disclosing or designating party").

(b)    Particular materials which are deemed by a party in good faith to disclose exceptionally sensitive Confidential Information of that party will be so identified and marked "Highly Confidential" by the disclosing or designating party.

(c)    The appropriate Confidential Legend shall be affixed by the disclosing party at the time when it serves or otherwise provides the Pleading and Discovery Materials to the other party.  In lieu of marking the original of a document that contains Confidential Information prior to inspection, counsel for the producing party may orally or otherwise designate all such documents being produced for inspection as Confidential Information, thereby making them subject to this Order.  The disclosing party, however, must mark any copies of such documents with the appropriate Confidential Legend when it later supplies such copies to the other party in order to make such copies subject to this Order.  If documents or things are produced by nonparties, either party may designate the documents or things as Confidential Information.

In the event a Confidential Legend is inadvertently omitted from a document, the disclosing party shall notify the receiving party of the oversight and the receiving party shall mark such document with the particular Confidential Legend designated by the disclosing party.

Inadvertent or unintentional disclosure by the producing party of Confidential Information, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality or privilege, either as to the specific information disclosed or as to any other information relating thereto or on the same related subject matter. Counsel for the parties shall in any event, upon discovery of inadvertent error, reasonably cooperate to restore the confidentiality or privileged nature of the information produced.

(d)     Tangible objects constituting or containing Confidential Information may be designated Confidential Information by affixing to the object or its container a label or tag marked with the appropriate Confidential Legend.

(e)     In the case of deposition testimony, a party may designate on the record during the deposition that the deposition testimony is deemed to be "Confidential" or "Highly Confidential," in which event the confidential portion(s) of the transcript of that deposition shall be removed from the transcript and separately bound, and the separately bound volume shall be marked with the designated Confidential Legend on its face and on each of the pages containing Confidential Information. Counsel for each of the other parties shall maintain the separately bound volume containing the confidential portion(s) of the transcript of the deposition in confidence pursuant to the terms of this Order. A party may also designate specific portions of the deposition as containing Confidential Information by notice to the other parties within 30 days after receipt of each finally certified transcript of a deposition, in which case the other party shall mark all of its copies of the transcript on their face and on the designated pages with the designated Confidential Legend to indicate that they contain Confidential Information, and

3

access to those portions of the transcript containing Confidential Information shall be restricted as provided hereunder.

      (f)    Any summary or copy containing or reflecting designated Confidential Information shall be subject to the terms of this Protective Order to the same extent as the information or document from which such summary or copy was made.

   3.    (a)    A party receiving Pleading and Discovery Materials identified with a Confidential Legend may, subject to the restrictions in subparagraph (b), below, disclose such materials solely to:

        (i)    partners and associate attorneys and secretarial, paralegal and staff personnel of outside attorneys for the party and any successors, substitutes or additional co-counsel thereto;

        (ii)    in-house counsel of the party and immediate support staff;

        (iii)    employees of the party for the purpose of assisting in the preparation and trial of this action, provided that employees receiving such Pleading and Discovery Materials execute, before any such disclosure is made, an acknowledgment of this Protective Order in the form attached hereto as **Exhibit A**;

        (iv)    independent experts or consultants (who are not regular employees of the party), provided that before any such disclosure is made the independent experts or consultants execute an acknowledgement of this Protective Order in the form attached hereto as **Exhibit A**, a copy of which, for an identified testifying expert only, shall be provided to counsel for the disclosing party at the time such expert's report is produced pursuant to Fed. R. Civ. P. 26(a)(2);

        (v)    court reporters;

(vi)    any outside copying service or other outside vendor providing assistance in obtaining copies of documents for discovery or for the preparation of the litigation of this matter;

(vii)    the Court and Court personnel; and

(viii)    any other person so permitted by order of this Court, after notice to all parties.

(b)    Notwithstanding the provisions of subparagraph (a), above, a party receiving Pleading and Discovery Materials identified as "Highly Confidential" shall not disclose such materials to its in-house counsel or to its employees as described in subparagraphs (a)(ii) or (a)(iii); provided, however, that Honeywell International Inc. may disclose such materials to its in-house counsel Chuck Graf and Gary Zanfanga and, INEOS Fluor Americas LLC may disclose such materials to Ian Menzies and a designee to be agreed upon by both parties.

(c)    No person to whom any Confidential Information is disclosed shall make any further disclosure thereof, except as permitted in this Protective Order, or use such information, except in connection with the preparation and trial of this action, provided, however, nothing herein shall be deemed to enlarge or diminish such person's rights and/or obligations with respect to such Confidential Information rightfully received prior to this litigation.

4.    Nothing contained herein shall be construed to restrict disclosure and use of documents, information, or things obtained through discovery, whether or not deemed confidential hereunder, to any person who in the course of his business duties had previously prepared, lawfully received, or had rightful access to such documents, information or things.

5

5.    Confidential Information identified and marked in accordance with this Protective

Order shall not be filed with the Court or included in whole or in part in pleadings, motions or

briefs except in sealed envelopes or other appropriate sealed containers on which shall be

endorsed the docket number of this action, the words "Confidential:  Filed Under Seal," a

general non-confidential description of the contents (e.g., Exhibit X or pages 2-5 of Mr. X's

deposition), and a statement substantially in the following form:

> This envelope contains documents or things which are filed under a Protective
> Order dated _____.  It shall not be opened or released from the custody of
> the Clerk of Court except by order or under direction of the Court.

A copy of any such filing may be delivered to the judge's chambers marked in the same

manner described above, if the judge permits or requests chambers' copies.

6.    When any testimony in this action is taken, whether in a deposition or before the

Court, counsel for any party may, before or after said testimony, give notice to counsel for all

other parties of the possibility that Confidential Information may be disclosed during the

testimony and such counsel may request that the testimony be adduced with only the

stenographer recording the testimony and those categories of persons permitted by paragraph 3,

above, in attendance.  The stenotype tape or other means of recording the testimony shall itself

be deemed Confidential Information subject to this Order.  The transcript and/or copies thereof

of any such testimony shall be provided only to those categories of persons qualified under

paragraph 3, above.

7.    Other than outside trial attorneys of record (including their partners, associate

attorneys, secretarial, paralegal and staff personnel) for the parties, in-house counsel for a

corporate party and immediate support staff, and the court or court personnel, any person to

whom Confidential Information will be disclosed, including any person or category of persons

designated pursuant to paragraph 11, below, shall execute, before any such disclosure is made, an acknowledgment of this Protective Order in the form attached hereto as **Exhibit A.**

8.       Pleading and Discovery Materials identified in accordance with this Protective Order, all copies thereof, and any extracts, descriptions, or summaries thereof are to be destroyed or returned to counsel for the disclosing party within 30 days after the termination of the litigation. Nevertheless, outside trial counsel for the receiving party shall be permitted to retain one archival copy of Pleading and Discovery Materials (including extracts, descriptions, and summaries) containing the Confidential Information. Counsel for the receiving party shall certify in writing that all Confidential Information, except an archival copy if applicable, has been returned to the disclosing party and/or destroyed. Counsel of record of a party in receipt of a document designated confidential hereunder by another party shall at all times ensure that access to the confidential Pleading and Discovery Materials (including extracts, descriptions, and summaries) is only provided to persons who are qualified to view them under this Protective Order, except such copies as are filed with the Court.

9.       In the event that any party determines that any Confidential Information marked or identified by it in accordance with this Protective Order should no longer be subject to this order, it may file with the Court a notice identifying such Confidential Information or part thereof and stating that its designation thereof as confidential pursuant to this Protective Order has been withdrawn. From and after the filing of such notice, such information and all actions taken with respect to such information shall no longer be subject to this Protective Order.

10.      In the event that a party desires to provide access to Confidential Information to any person or categories of persons not included in paragraph 3, above, or seeks the removal of a Confidential designation, the parties shall try first to resolve such dispute in good faith on an

informal basis. If the dispute cannot be so resolved, the objecting party may seek appropriate relief from this Court by, for example, moving for an order permitting such persons or categories of persons access to the Confidential Information or removing the Confidential designation. In the resolution of such motion, the burden of establishing that the information is Confidential shall be on the disclosing or designating party. In the event that a new person or category of persons is permitted access to the Confidential Information, such persons must execute the acknowledgement of this Protective Order in the form attached hereto as **Exhibit A.**

11.     With respect to any particular item of Confidential Information, the restriction on dissemination, access, disclosure, and use of such item or of information contained therein shall not apply to the party who identified or marked such item as confidential in accordance with this Protective Order or to such party's agents, officers, directors or attorneys.

12.     Nothing herein shall prevent disclosure beyond the terms of this Order if the parties mutually agree in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosure.

13.     No party shall be deemed to have waived the attorney-client privilege, attorney work product doctrine, or any other privilege or doctrine by virtue of this Protective Order.

14.     This Protective Order shall survive the entry of judgment in this action or any voluntary dismissal of this action and shall continue in full force and effect, without limitation in time, subject to further order of the Court. The parties shall have the right to move the Court to modify or supplement this Protective Order.

15. This Protective Order is without prejudice to the right of any party to seek relief or additional protection from this Court from any of the provisions provided herein.

16. Each party and its counsel agree to abide by the terms of this Stipulation and Order in the interim period between execution by counsel and entry of a Protective Order by the Court.

17. The parties to this action agree that the production of any Pleading and Discovery Materials by any non-party shall be subject to and governed by the terms of this Stipulation and Order. In the event that additional parties join or are joined in this litigation and desire to have access to Pleading and Discovery Materials, they shall not have access to such materials until the additional party by its counsel has executed and filed with the Court its agreement to be fully bound by this Stipulation and Order.

| YOUNG CONAWAY STARGATT & TAYLOR, LLP | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| *C. Barr Flinn (#4092)* | *Martin P. Tully (#465)* |
| Karen L. Pascale (#2903) | Jason A. Cincilla (#4232) |
| The Brandywine Building | 1201 N. Market Street |
| 1000 West Street, 17th Floor | P.O. Box 1347 |
| Wilmington, DE 19801 | Wilmington, DE  19899 |
| (302) 571-6600 | (302) 658-9200 |
| *Attorneys for Plaintiff,* | *Attorneys for Defendant,* |
| *INEOS Fluor Americas LLC* | *Honeywell International Inc.* |

OF COUNSEL:                          OF COUNSEL:

Richard S. Order                     KIRKLAND & ELLIS LLP
Mark D. Alexander                    Yosef J. Riemer
AXINN, VELTROP & HARKRIDER LLP       Andrew R. Dunlap
90 State House Square                Michael D. Reisman
Hartford, CT 06103                   153 East 53rd Street
(860) 275-8100                       New York, NY 10022
                                     (212) 446-4800

                                     -and-

                                     Mark L. Kovner
                                     Michael S. Becker
                                     655 Fifteenth Street, NW
                                     Suite 1200
                                     Washington, DC 20005-5793
                                     (202) 879-5000

Dated:  August 17, 2006

9

**SO ORDERED** this _____ day of _____, 2006

                         _____

                           Hon. Sue L. Robinson
                           United States District Judge

**EXHIBIT A**

AGREEMENT CONCERNING MATERIAL
COVERED BY A PROTECTIVE ORDER
ENTERED BY THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
ON _____ ___, 2006

The undersigned hereby acknowledges that he or she has received and read the Protective Order entered on August __, 2006 in the lawsuit entitled, *INEOS Fluor Americas LLC v. Honeywell Int'l Inc., Docket No. 06-189 (SLR),* pending in the United States District Court for the District of Delaware. The undersigned agrees to be bound by the terms of that Protective Order and to submit to and be subject to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcement of the terms of that Protective Order.

Dated: _____

_____
(Print Name)


_____
(Signature)

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 18, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Martin P. Tully [mtully@nmat.com]
Jason A. Cincilla [jcincilla@mnat.com]
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I further certify that on August 18, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### *By E-Mail and U.S. Mail*

Yosef J. Riemer [yriemer@kirkland.com]
Gregory T. Heyman [gheyman@kirkland.com]
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022

Mark L. Kovner [mkovner@kirkland.com]
Michael S. Becker [mbecker@kirkland.com]
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Suite 1200

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Karen L Pascale*

C. Barr Flinn (#4092) [bflinn@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

DB02:5269446.1                                                    065061.1001

- and-

Richard S. Order
Mark D. Alexander
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860)275-8100

*Attorneys for Plaintiff INEOS Fluor Americas LLC*

# EXHIBIT 7

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC.,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 06-189 (SLR)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF INEOS FLUOR AMERICAS LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT HONEYWELL'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff INEOS Fluor Americas LLC ("INEOS") hereby responds and objects to the Second Request for Production of Documents served by Defendant Honeywell International Inc. ("Honeywell") on October 20, 2006.

## GENERAL OBJECTIONS

1. INEOS objects to each Definition, Instruction and Request that places a requirement or obligation upon INEOS beyond the requirements and obligations imposed by the Federal Rules of Civil Procedure or a Rule of this Court. INEOS will answer each Request in accordance with such rules.

2. INEOS objects to each Request to the extent that it requests production of documents not within INEOS' possession, custody or control.

3. INEOS objects to each Request to the extent that it calls for the production of documents that are neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

4.  INEOS objects to each Request to the extent that it is unreasonably cumulative or duplicative.

5.  INEOS objects to each Request to the extent that it is vague or ambiguous.

6.  INEOS objects to each Request to the extent that it is oppressive, overly broad or unduly burdensome.

7.  INEOS objects to each Definition, Instruction and Request that purports to require identification and disclosure of documents and information that were prepared in anticipation of litigation; constitute attorney work product; disclose the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of INEOS; contain privileged attorney-client communications; or are otherwise protected from disclosure.  INEOS hereby claims such privileges and protections to the extent implicated by each Definition, Instruction or Request and will exclude privileged and protected information from its responses to Honeywell's Requests.

8.  Nothing contained in these Responses is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, any work product protection, or any other applicable privilege, immunity, doctrine, or protection.  Inadvertent production of any document that is subject to any privilege or confidentiality protection, in whole or in part, shall not constitute a waiver of any privilege or of any other ground for objection to discovery of such document, the information contained therein, or the subject matter thereof.  Nothing contained in these Responses shall be deemed to impair INEOS' right to object to the use of such document or the information contained therein.

9.  INEOS objects to Honeywell's Definition No. 6 of "Hardship provision" to mean "any provision in a contract for the sale or purchase of florine-based [sic] chemicals or products

(or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract," to the extent that such definition is purported to have any applicability or significance broader than the instant Request for the Production of Documents.

10.   INEOS objects to Honeywell's Definition No. 13 of "INEOS" to mean "Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities." INEOS objects to this Definition on the grounds that it is overly broad and seeks to impose an obligation on INEOS Fluor Americas LLC to produce documents that are not within its possession, custody or control.

11.   INEOS objects to Honeywell's Definition No. 16 of "Refrigerant business" to mean "the development, production and sale of products used in the development, manufacture and operation of commercial and consumer cooling and refrigeration systems or products" on the grounds that the "refrigerant business" is not relevant to a claim or defense of any party and requests for production incorporating this Definition are therefore overly broad and not reasonably calculated to lead to the discovery of admissible information.

12. INEOS objects to Honeywell's Instruction No. 19 ("Each document is to be produced along with all non-identical drafts thereof in its entirety, without abbreviation or redaction.") to the extent that it purports to call for the production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege. INEOS reserves the right to withhold or redact documents or things responsive to this Request for Production to the extent such documents or things, or portions thereof, are protected from disclosure by any applicable privilege.

13. INEOS objects to Honeywell's Instruction No. 21 ("The source(s) or derivation of each document produced shall be specifically identified.") to the extent that it purports to place requirements on INEOS beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Subject to this Objection and to the General Objections, INEOS will disclose, where available, the custodian from whom each document responsive to this Request for Production was obtained.

14. INEOS objects to Honeywell's Instruction No. 23 ("In the event that any document called for by these Requests or subsequent Requests has been destroyed or discarded, that document is to be identified by stating: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.") on the grounds that it is impracticable and unduly burdensome. Documents responsive to this Request for Production may date back as far as January 1, 2003. For the most part, INEOS has no method of identifying documents that may

have been discarded or destroyed at any time between January 1, 2003 and the present, and does not maintain the information requested by this Instruction in the normal course of its business.

15. INEOS objects to Honeywell's Instruction No. 24 ("If any portion of any document is responsive to any Request, the entire document shall be produced, including, but not limited to, all cover sheets, appendices, or attachments.") to the extent that it purports to call for the production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege. INEOS reserves the right to withhold or redact documents or things responsive to this Request for Production to the extent such documents or things, or portions thereof, are protected from disclosure by any applicable privilege.

16. INEOS responds to each Request to the best of its present knowledge. INEOS reserves the right to amend, supplement or correct its Objections or Responses, as necessary.

17. These Responses shall in no way be construed as a concession that any Definition or Instruction in Honeywell's Request for Production of Documents is correct, appropriate, or binding on INEOS and shall in no way be construed as a waiver of any of INEOS' objections, including without limitation, objections regarding the discoverability or admissibility of documents or other evidence.

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 33.**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent or "Heads of Agreement," between Ineos and Interdynamics, Inc., including but not limited to the documents attached as Exhibit A.

**PLAINTIFF'S RESPONSE TO REQUEST NO. 33:**

INEOS objects to this Request to the extent that it is overly broad, unduly burdensome and seeks documents that are neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to these objections and the General Objections, INEOS will produce any non-privileged documents responsive to this request concerning the hardship clause in the contract between INEOS Fluor Americas LLC and Interdynamics, Inc. attached as Exhibit A to Honeywell's Second Document Request.

**Request No. 34.**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent or "Heads of Agreement," between Ineos and PPG Industries, including but not limited to the documents attached as Exhibit B.

**PLAINTIFF'S RESPONSE TO REQUEST NO. 34:**

INEOS objects to this Request to the extent that it is overly broad, unduly burdensome and seeks documents that are neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to these objections and the General Objections, INEOS will produce any non-privileged documents responsive to this request concerning the hardship clause in the contract

between INEOS Fluor Americas LLC and PPG Industries attached as Exhibit B to Honeywell's

Second Document Request.

AXINN, VELTROP & HARKRIDER LLP

Dated: November 20, 2006

Richard S. Order
Mark D. Alexander
90 State House Square
Hartford, CT 06103
Tel: 860-275-8100

C. Barr Flinn (No. 4092) [bflinn@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: 302-571-6600

*Attorneys for Plaintiff INEOS Fluor Americas LLC*

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by first class United States mail, postage prepaid, this 20th day of November, 2006 to:

Martin P. Tully, Esq.
Jason A. Cincilla, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

Yosef J. Riemer, Esq.
Andrew R. Dunlap, Esq.
Michael D. Reisman, Esq.
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY 10022

Mark L. Kovner, Esq.
Michael S. Becker, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005-5793

By: _____
Mark D. Alexander

# EXHIBIT 9

STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-189 (SLR) |
| ) | |
| HONEYWELL INTERNATIONAL INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## HONEYWELL'S THIRD SET OF INTERROGATORIES

Defendant Honeywell International Inc. hereby requests, pursuant to Federal Rules of Civil Procedure 26 and 33, that Plaintiff, INEOS Fluor Americas LLC answer the following interrogatories under oath within thirty (30) days after service of this Second Set of Interrogatories.

## DEFINITIONS

1.  "All" shall be construed to include the term "each," and "each" shall be construed to include the term "all."

2.  "Any" as used herein includes the word "all," and the word "all" as used herein includes the word "any."

3.  "Communication" or "communications" mean, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether written, oral or other means, including, but not limited to, electronic communications and electronic mail ("E-mail").

4.  "Document" or "documents" is used in the broadest sense and in accordance with the Federal Rules of Civil Procedure. "Document" or "documents" include within its meaning, by way of example and not of limitation, any and all papers, photographs, films, recordings,

memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of any kind, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original.  The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.  The term "document" or "documents" includes, without limitation, any original, draft and/or non-identical copy of any document identified, as well as any attachment to, enclosure with, and/or document referenced by any document identified, and specifically encompasses all documents or communications recorded in electronic form or on a computer.

5.      "Fluorspar business" means the development, production and sale of fluorspar products.

6.      "Hardship provision" means any provision in a contract for the sale or purchase of florine-based chemicals or products (or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract.

7.      "Heads of Agreement" means the document executed by Honeywell and INEOS contemporaneously with the Third Amendment to the HF Contract in March 2004.

8.      "HF Contract" means the agreement for the supply of HF entered into by Allied-Signal Inc. and ICI Americas Inc. on November 30, 1989.

9.      "HF" means hydrogen fluoride, also known as anhydrous hydrofluoric acid or hydrofluoric acid ("HFA").

10.     "HFC" means hydrofluorocarbon.

2

11.    "Honeywell" means Defendant Honeywell International Inc. and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

12.    "Including" means including and without limitation.

13.    "INEOS" means Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

14.    "Ineos Refrigerants" means any refrigerant products offered for sale by Ineos, including but not limited to Hydrofluorocarbon 134a; Hydrofluorocarbon 125; Hydrochlorofluorocarbon 22; orRefrigerant blends containing HFC 134a, HFC 125, HFC 32, or HFC 143a.

15.    "Lucite" means Lucite International, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the

3

foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

16.    "Quimica Fluor" means Mexichem Fluor, S.A. de C.V., Quimica Fluor S.A. de C.V., and their employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

17.    "Reflect," "reflecting," "related to," "refer to," "relating to," and "referring to," mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

18.    "Refrigerant business" means the development, production and sale of products used in the development, manufacture and operation of commercial and consumer cooling and refrigeration systems or products.

19.    "TCE" means Trichloroethylene.

20.    "Third Amendment to the HF Contract" means the amendment to the HF Contract executed by Honeywell and INEOS in March 2004.

21.    The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

4

## INSTRUCTIONS

22.    Each interrogatory shall be answered separately and fully, in writing and under oath, unless it is objected to, in which event INEOS shall state the reasons for its objection and shall answer to the extent the interrogatory is not objectionable.

23.    The answers are to be signed by the person making them, and the objections signed by the attorney making them.

24.    All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated with specificity or in a timely objection is waived unless excused by the Arbitrator for good cause shown.

25.    The answers to these interrogatories must include all information known to INEOS, its agents and employees, and all persons acting on their behalf or under their control.

26.    If the answer to any interrogatory, or any subsection of any interrogatory, is unknown or cannot be answered in full after exercising due diligence to secure the necessary information to do so, please so state, answer to the extent known (specifying the reasons for INEOS's inability to answer the remainder, and stating what information, knowledge or belief INEOS has concerning the unanswered portion), and include the name and the address of any person, office, organization or agency that has or might have such information.

27.    Please provide the source, author, custodian and the location of each document referred to in answering these interrogatories and set forth a precise description of the contents of each document.

28.    These interrogatories are continuing in nature pursuant to Federal Rule of Civil Procedure 26. If, after answering the interrogatories, INEOS obtains or becomes aware of any further responsive information, either directly or indirectly, a supplementary answer is required. INEOS is under a duty seasonably to amend a prior response upon learning that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to Respondent during the discovery process or in writing.

29.    If you contend that any requested information is subject to any privilege (such as attorney-client) or protection (such as attorney work-product) and you intend to assert such privilege or protection, you are required to set forth a sufficient factual basis to establish that such privilege or protection is applicable to the requested information (e.g., by preparing a list of withheld information in a "privilege log").  Compliance with the above instructions is not to be construed as an admission by Respondent that such privilege or protection is valid, and Respondent reserves its right to challenge any purported claim or privilege or protection.

30.    In answering, INEOS is requested to identify separately, and in a manner suitable under Federal Rule of Civil Procedure 34, all documents and records maintained by INEOS that INEOS relies upon in answering these interrogatories.

31.    All definitions set above are in addition to the defined words' standard meanings. If INEOS contends that it does not understand the definition of the term or phrase used in any interrogatory, it should respond to that portion of the interrogatory that it does understand and explain what it is that it does not understand with regard to the remainder of the interrogatory.  If INEOS believes that an interrogatory is overbroad in part, it should respond to that portion of the interrogatory that it does not consider overbroad and explain why the remainder is supposedly overbroad.

## RELEVANT PERIOD

32.    Unless otherwise specified, answers requested in these interrogatories are for the time period of January 1, 2003 to the present.

## INTERROGATORIES

12.    Briefly describe all occasions, from January 1, 2005 to the present, on which Ineos increased the price of any Ineos Refrigerant sold to any entity, including for each occasion: (a) the entity purchasing the Ineos Refrigerant; (b) the Ineos Refrigerant at issue; (c) the amount of the price increase (including the amounts of prices before and after the increase); and (d) the date upon Ineos implemented the price increase.

13.    For each occasion identified in response to Interrogatory 12, above, briefly describe whether Ineos invoked, cited, referenced, or made a declaration pursuant to a hardship provision in seeking or implementing the price increase described.

14.    For each occasion identified in response to Interrogatory 12, above, briefly describe whether Ineos invoked, cited, or referenced an increase in any of its raw material costs in producing the Ineos Refrigerant at issue in seeking or implementing the price increase described.

15.    Identify all persons with knowledge of or responsibility for the drafting, review, or implementation of the document attached as Exhibit A.

Dated: March 13, 2007

Of Counsel:


Yosef J. Riemer
Andrew R. Dunlap
Michael D. Reisman
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022
(212) 446-4800

Mark L. Kovner
Michael S. Becker
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW, Suite 1200
Washington, DC  20005-5793
(202) 879-5000

*Attorneys for Defendant Honeywell
International Inc.*

Martin P. Tully (#465)
Jason A. Cincilla (#4232)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
Wilmington, Delaware  19899
(302) 658-9200

*Attorneys for Defendant Honeywell
International Inc.*

8

# EXHIBIT 10

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **INEOS FLUOR AMERICAS LLC,** | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) | **C.A. No. 06-189 (SLR)** |
| **HONEYWELL INTERNATIONAL INC.,** | ) ) | |
| *Defendant.* | ) ) | |

## PLAINTIFF INEOS FLUOR AMERICAS LLC'S RESPONSES AND OBJECTIONS TO DEFENDANT HONEYWELL'S THIRD SET OF INTERROGATORIES

Plaintiff INEOS Fluor Americas LLC ("INEOS") hereby responds and objects to the Third Set of Interrogatories served by Defendant Honeywell International Inc. ("Honeywell") on March 13, 2007.

## GENERAL OBJECTIONS

1.   INEOS objects to each Definition, Instruction and Interrogatory that places a requirement or obligation upon INEOS beyond the requirements and obligations imposed by the Federal Rules of Civil Procedure or a Rule of this Court.  INEOS will answer each Request in accordance with such rules.

2.   INEOS objects to each Interrogatory to the extent that it requests information not within INEOS' possession, custody or control.

3.   INEOS objects to each Request to the extent that it calls for information that is neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

4.   INEOS objects to each Interrogatory to the extent that it is unreasonably cumulative or duplicative.

5.   INEOS objects to each Interrogatory to the extent that it is vague or ambiguous.

6.   INEOS objects to each Interrogatory to the extent that it is oppressive, overly broad or unduly burdensome.

7.   INEOS objects to each Definition, Instruction and Interrogatory that purports to require identification and disclosure of information prepared in anticipation of litigation; constitutes attorney work product; discloses the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of INEOS; contains privileged attorney-client communications; or is otherwise protected from disclosure.  INEOS hereby claims such privileges and protections to the extent implicated by each Definition, Instruction or Interrogatory and will exclude privileged and protected information from its responses to Honeywell's Interrogatories.

8.   Nothing contained in these Responses is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, any work product protection, or any other applicable privilege, immunity, doctrine, or protection.

9.   INEOS objects to Honeywell's Definition No. 6 of "Hardship provision" to mean "any provision in a contract for the sale or purchase of florine-based [sic] chemicals or products (or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract," to the extent that such definition is purported to have any applicability or significance broader than the instant Interrogatories.

10. INEOS objects to Honeywell's Definition No. 13 of "INEOS" to mean "Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities." INEOS objects to this Definition on the grounds that it is overly broad and seeks to impose an obligation on INEOS Fluor Americas LLC to produce information not within its possession, custody or control.

11. INEOS objects to Honeywell's Definition No. 14 of "INEOS Refrigerants" to mean "any refrigerant products offered for sale by INEOS, including but not limited to Hydrofluorocarbon 134a; Hydrofluorocarbon 125; Hydrochlorofluorocarbon 22; or Refrigerant blends containing HFC 134a, HFC 125, HFC 32, or HFC 143a." INEOS objects to this definition on the grounds that it is overly broad and refers to documents and information that is not relevant to a claim or defense of any party and Interrogatories incorporating this definition are, therefore, overly broad, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible information.

12. INEOS objects to Honeywell's Definition No. 15 of "Lucite" to mean "Lucite International, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint

3

ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint

venturer or a limited partner; all past or present officers, directors, employees, agents, including,

without limitation, attorneys, accountants, auditors, consultants and other professional persons or

experts, and any investigators or other persons acting on behalf or at the direction of any such

person, of any of the foregoing entities." INEOS objects to this definition on the grounds that it

is overly broad, vague, and ambiguous and seeks to impose an obligation on INEOS to produce

documents that are not within its possession, custody, or control.  Additionally, INEOS objects to

this definition to the extent it includes entities beyond Lucite International Inc., the only entity

within the definition that did work on behalf of plaintiff INEOS Fluor Americas LLC.

      13. INEOS objects to Honeywell's Definition No. 18 of "Refrigerant business" to mean

"the development, production and sale of products used in the development, manufacture and

operation of commercial and consumer cooling and refrigeration systems or products" on the

grounds that the "Refrigerant business" is not relevant to a claim or defense of any party and

Interrogatories incorporating this Definition are, therefore, overly broad and not reasonably

calculated to lead to the discovery of admissible information.

      14. INEOS objects to Honeywell's Instruction No. 27 ("Please provide the source, author,

custodian and the location of each document referred to in answering these interrogatories and

set forth a precise description of the contents of each document") to the extent that it purports to

place requirements on INEOS beyond those imposed by the Federal Rules of Civil Procedure or

the Rules of this Court.  Subject to this Objection and to the General Objections, INEOS will

disclose, where available, the custodian from whom each document referred to in these

Interrogatory responses was obtained.

15. INEOS responds to each Interrogatory to the best of its present knowledge. INEOS

reserves the right to amend, supplement or correct its Objections or Responses, as necessary.

16. These Responses shall in no way be construed as a concession that any Definition or

Instruction in Honeywell's Third Set of Interrogatories is correct, appropriate, or binding on

INEOS and shall in no way be construed as a waiver of any of INEOS' objections, including

without limitation, objections regarding the discoverability or admissibility of documents or

other evidence.

## INTERROGATORY RESPONSES AND OBJECTIONS

**Interrogatory No. 12:**

Briefly describe all occasions, from January 1, 2005 to the present, on which INEOS increased
the price of any Ineos Refrigerant sold to any entity, including for each occasion:  (a) the entity
purchasing the Ineos Refrigerant; (b) the Ineos Refrigerant at issue; (c) the amount of the price
increase (including the amounts of prices before and after the increase); and (d) the date upon
[*sic*] Ineos implemented the price increase.

**RESPONSE:**

INEOS objects to Interrogatory 12 on the grounds that it is overly broad and requests

information that is not relevant to a claim or defense of any party or reasonably calculated to lead

to the discovery of admissible evidence. INEOS objects to this Interrogatory to the extent that it

seeks information protected by the attorney-client privilege, work product doctrine, or other

applicable privilege.

**Interrogatory No. 13:**

For each occasion identified in response to Interrogatory 12, above, briefly describe whether
Ineos invoked, cited, referenced, or made a declaration pursuant to a hardship provision in
seeking or implementing the price increase described.

5

**RESPONSE:**

INEOS objects to Interrogatory 13 on the grounds that it is overly broad and requests information that is not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.  INEOS objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to this Objection and to the General Objections, INEOS has not invoked, cited, referenced, or made a declaration pursuant to a hardship provision in seeking or implementing any price increase for "INEOS Refrigerants" from January 1, 2005 to the present.

**Interrogatory No. 14:**

For each occasion identified in response to Interrogatory 12, above, briefly describe whether Ineos invoked, cited, or referenced an increase in any of its raw material costs in producing the Ineos Refrigerant at issue in seeking or implementing the price increase described.

**RESPONSE:**

INEOS objects to Interrogatory 14 on the grounds that it is overly broad and requests information that is not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.  INEOS objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

**Interrogatory No. 15:**

Identify all persons with knowledge of or responsibility for the drafting, review, or implementation of the document attached as Exhibit A.

**RESPONSE:**

INEOS objects to Interrogatory 15 on the grounds that it is overly broad and vague and requests information that is not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. INEOS objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to this Objection and to the General Objections, INEOS responds as follows with respect to the portion of Exhibit A that relates to INEOS's purchase or use of HF: Peter Geosits, Mark Boncardo, and John Pacillo.

AXINN, VELTROP & HARKRIDER LLP

Dated: April 16, 2007

Richard S. Order
Mark D. Alexander
90 State House Square
Hartford, CT 06103
Tel: 860-275-8100

C. Barr Flinn (No. 4092) [bflinn@ycst.com]
Karen L. Pascale (No. 2903) [kpascale@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel.: 302-571-6600

*Attorneys for Plaintiff INEOS Fluor Americas LLC*

7

### <u>VERIFICATION</u>

I, Peter Geosits, Americas Commercial Director of INEOS Fluor Americas LLC, have read the foregoing answers to interrogatories and believe them to be true on the basis of my personal knowledge.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April ___, 2007.

---

Peter Geosits
Americas Commercial Director
INEOS Fluor Americas LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by first class United States mail, postage prepaid, this 16th day of April, 2007 to:

Martin P. Tully, Esq.
Jason A. Cincilla, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Yosef J. Riemer, Esq.
Andrew R. Dunlap, Esq.
Michael D. Reisman, Esq.
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY  10022

Mark L. Kovner, Esq.
Michael S. Becker, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC  20005-5793

By: _____
        Richard S. Order, Esq.
        Axinn, Veltrop & Harkrider LLP