UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No(s).: 06-189 (SLR) |
| ) | |
| HONEYWELL INTERNATIONAL INC., ) | Calendar: |
| ) | |
| ) | REDACTED |
| Defendants. ) | PUBLIC VERSION |
| ) | |

DECLARATION OF ANDREW R. DUNLAP IN SUPPORT OF
HONEYWELL'S MOTION TO COMPEL DOCUMENTS
FROM THIRD PARTY LUCITE INTERNATIONAL

**Andrew R. Dunlap** hereby declares as follows:

1.      I am a member of the law firm of Kirkland & Ellis LLP, attorneys for Honeywell International Inc. ("Honeywell"). I submit this declaration in support of Honeywell's Motion to Compel Documents From Third Party Lucite International.

2.      True and accurate copies of the following documents are attached hereto as indicated:

Exhibit 1:      McLaughlin Dep., Mar. 30, 2007 (selected pages);

Exhibit 2:      Email from John Grant to Robert Schiller and Blake Wiseman (Mar. 8, 2003) (HON 008241);

**REDACTED**

Exhibit 3:      Email from Eric McLaughlin to Robert Schiller (Oct. 9, 2003); (HON 29157);

Confidential Version Filed:  May 11, 2007
Redacted Public Version Filed:  May 18, 2007

Exhibit 4:    Email from John Grant to Eric McLaughlin (Oct. 9, 2003) (HON 027620);

**REDACTED**

Exhibit 5:

**REDACTED**

Exhibit 6:    Lucite Subpoena, Feb. 13, 2007;

Attachment A: Req. For Produc. Of Docs., Feb 13, 2007;

Exhibit 7:    Nonparty Lucite International's Resps. and Objections to Def. Honeywell's Subpoena and Req. for Produc., Feb. 23, 2007;

Exhibit 8:    Letter from Andrew Dunlap to Richard Order (Apr. 3, 2007);

Exhibit 9:    Letter from Richard Order to Andrew Dunlap (Apr. 13, 2007);

Exhibit 10:    Letter from Andrew Dunlap to Richard Order (Apr. 23, 2007);

Exhibit 11:    Letter from Richard Order to Andrew Dunlap (Apr. 26, 2007);

Exhibit 12:    *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-1717, 2007 WL 137152 (D. Del. 2007).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2007
[New York, New York]

_____
Andrew R. Dunlap

2

## **CERTIFICATE OF SERVICE**

Patricia L. Enerio, Esquire, hereby certifies that on May 11, 2007, copies of the foregoing

Declaration of Andrew R. Dunlap were served electronically and via hand delivery on the parties

listed below:

C. Barr Flinn, Esquire
Chad S.C. Stover, Esquire
Karen L. Pascale, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Jason A. Cincilla, Esquire
Martin P. Tully, Esquire
Morris, Nichols, Arsht, & Tunnell
1201 North Market Street
Wilmington, DE 19899

Patricia L. Enerio (# 3728)

# EXHIBITS 1-5

**To the Declaration of Andrew R. Dunlap in Support of
Honeywell's Motion to Compel Documents From Third Party Lucite International**

# REDACTED

# EXHIBIT 6

**To the Declaration of Andrew R. Dunlap in Support of
Honeywell's Motion to Compel Documents From Third Party Lucite International**

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

WESTERN      DISTRICT OF      TENNESSEE

INEOS FLUOR AMERICAS LLC

V.

HONEYWELL INTERNATIONAL INC.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  06-189 SLR
(District of Delaware)

TO: Lucite International
7275 Goodlett Farms Parkway
Cordova, TN  38016

☐ **YOU ARE COMMANDED** to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

The documents listed on Attachment A.

| PLACE    Alpha Reporting Corporation, 236 Adams Avenue, Memphis, TN 38103 | DATE AND TIME<br>3/13/2007 8:00 am |
|---|---|

☐ **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    *ATTORNEY FOR DEFENDANT* | DATE<br>2/13/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew R. Dunlap  Kirkland & Ellis LLP  153 East 53rd Street, New York, NY 10022  (212) 446-4800

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

<u>AO88  (Rev.  12/06) Subpoena in a Civil Case</u>

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                       DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**TAB A**

## ATTACHMENT A

## DEFINITIONS

1.     "All" shall be construed to include the term "each," and "each" shall be construed to include the term "all."

2.     "Any" as used herein includes the word "all," and the word "all" as used herein includes the word "any."

3.     "Communication" or "communications" mean, without limitation, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether written, oral or other means, including, but not limited to, electronic communications and electronic mail ("E-mail").

4.     "Document" or "documents" is used in the broadest sense and in accordance with the Federal Rules of Civil Procedure. "Document" or "documents" include within its meaning, by way of example and not of limitation, any and all papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of any kind, inter-office memoranda or written communications of any nature, recordings of conversations either in writings or upon any mechanical or electrical recording devices, including e-mail, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter of any nature, from the original. The foregoing specifically includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail. The term "document" or "documents" includes, without limitation, any original, draft and/or non-identical copy of any document identified, as well as any attachment to, enclosure

with, and/or document referenced by any document identified, and specifically encompasses all documents or communications recorded in electronic form or on a computer.

5.    "Fluorspar business" means the development, production and sale of fluorspar products.

6.    "Hardship provision" means any provision in a contract for the sale or purchase of florine-based chemicals or products (or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract.

7.    "Heads of Agreement" means the document executed by Honeywell and INEOS contemporaneously with the Third Amendment to the HF Contract in March 2004.

8.    "HF Contract" means the agreement for the supply of HF entered into by Allied-Signal Inc. and ICI Americas Inc. on November 30, 1989.

9.    "HF" means hydrogen fluoride, also known as anhydrous hydrofluoric acid or hydrofluoric acid ("HFA").

10.    "HFC" means hydrofluorocarbon.

11.    "Honeywell" means Defendant Honeywell International Inc. and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

12.    "Including" means including and without limitation.

13.    "INEOS" means Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor

2

companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

14.    "Lucite" means Lucite International, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

15.    "Quimica Fluor" means Mexichem Fluor, S.A. de C.V., Quimica Fluor S.A. de C.V., and their employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities.

16.    "Reflect," "reflecting," "related to," "refer to," "relating to," and "referring to," mean relating to, referring to, concerning, mentioning, reflecting, pertaining to, evidencing, involving, describing, discussing, commenting on, embodying, responding to, supporting,

contradicting, or constituting (in whole or in part), as the context makes appropriate.

17.   "Refrigerant business" means the development, production and sale of products used in the development, manufacture and operation of commercial and consumer cooling and refrigeration systems or products.

18.   "Third Amendment to the HF Contract" means the amendment to the HF Contract executed by Honeywell and INEOS in March 2004.

19.   The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed outside of its scope.

## INSTRUCTIONS

20.   Each document is to be produced along with all non-identical drafts thereof in its entirety, without abbreviation or redaction.

21.   All documents shall be produced in the order that they are kept in the usual course of business, and shall be produced in their original folders, binders, covers or containers, or photocopies thereof.

22.   The source(s) or derivation of each document produced shall be specifically identified.

23.   In the event that any document called for by these Requests or subsequent Requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by describing the nature of the document, including: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the subject matter(s) of the document; (iv) the nature of the privilege or immunity asserted; and (v) any additional facts on which you would base your claim of privilege or immunity.

24.   In the event that any document called for by these Requests or subsequent

4

Requests has been destroyed or discarded, that document is to be identified by stating: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

25.    If any portion of any document is responsive to any Request, the entire document shall be produced, including, but not limited to, all cover sheets, appendices, or attachments.

26.    Any document that contains any notation, addition, insertion, or marking of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document.

27.    All definitions set above are in addition to the defined words' standard meanings. If INEOS contends that it does not understand the definition of the term or phrase used in any discovery Request, respond to that portion of the Request that it does understand and explain what it is that it does not understand with regard to the remainder of the Request. If INEOS believes that a discovery Request is overbroad in part, respond to that portion of the Request that it does not consider overbroad and explain why the remainder is supposedly overbroad.

28.    These Requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

29.    If no document exists which is responsive to a particular request, please state that no such document exists.

## RELEVANT PERIOD

30.    Unless otherwise specified, documents are requested for the time period of January 1, 2003 to the present.

## REQUESTS FOR PRODUCTION

1.      Documents sufficient to show the corporate structure of Lucite including all parent, subsidiary, and affiliated companies.

2.      Documents sufficient to show Lucite's organizational and management structure, including without limitation organizational charts and job descriptions.

3.      All documents relating to Lucite's or INEOS's strategic business or marketing plans, including without limitation Lucite's or INEOS's plans for those aspects of its business utilizing HF.

4.      All documents relating to any Lucite or INEOS board of directors meetings, including without limitation presentations to the Board and meeting minutes.

5.      All documents relating to Lucite's or INEOS's financial performance, including without limitation annual reports, securities disclosures, audited financial statements, and internal analyses and projections.

6.      All documents relating to the HF Contract, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the HF Contract.

7.      All documents relating to the Third Amendment to the HF Contract, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the Third Amendment to the HF Contract.

8.      All documents relating to the Heads of Agreement, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the Heads of Agreement.

9.      All documents, from any time, relating to any hardship provision in any contract involving Lucite or INEOS, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of such hardship provisions.

6

10.    All documents relating to Lucite's or INEOS's efforts to acquire HF from any source, including without limitation documents and communications relating to (a) Lucite's or INEOS's actual or potential acquisition of HF from Honeywell, Solvay, Quimica Fluor, or any other person or entity; and (b) Lucite's or INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

11.    All documents relating to Lucite's or INEOS's communications, whether written or oral, with any person, company, or entity regarding the supply or potential supply of HF to INEOS, including without limitation (a) offers or solicitations made to Lucite or INEOS for the sale of HF to INEOS; (b) Lucite's or INEOS's actual or potential acquisition of HF from any source; and (c) INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

12.    All documents relating to Lucite's or INEOS's knowledge or awareness of actual or potential sources of HF, including without limitation all communications and documents relating to (a) any person or entity able to or offering supply HF to Lucite or INEOS or any other person or entity; and (b) any offers, discussions, communications, or (formal or informal) requests by any person or entity to Lucite or INEOS relating to the actual or potential supply of HF to Lucite or INEOS.

13.    All documents relating to Lucite's or INEOS's use of HF, including without limitation (a) Lucite's or INEOS's volume requirements for HF; (b) Lucite's or INEOS's anticipated or actual costs for its HF purchases; (c) Lucite's or INEOS's anticipated and actual revenues from its HF-based businesses; (d) Lucite's or INEOS's potential or actual sources of HF; (e) Lucite's or INEOS's historic and prospective demand for HF; and (f) the prices of and customers for Lucite's or INEOS's HF-based products.

14.    All documents relating to Lucite's or INEOS's communications with actual or potential HF producers regarding increased costs to produce HF and measures being taken to address these cost increases.

15.    All documents relating to conduct by Honeywell that INEOS alleges monopolized

or attempted to monopolize the alleged relevant market.

16.     All documents relating to INEOS's allegations that Honeywell has monopoly power, or a dangerous probability of acquiring monopoly power, in the alleged relevant market.

17.     All documents relating to INEOS's allegation that entry into the alleged relevant market would not occur in response to a small but significant price increase, as alleged in Paragraph 31 of the Complaint.

18.     All documents relating to competition in the sale of HF, including without limitation documents and communications relating to (a) HF production costs; (b) HF pricing; (c) potential and actual supply sources of HF; (d) transportation and shipping of HF; (e) the supply of HF; (f) buyers and sellers of HF; (g) HF market participants; (h) competition among HF producers; (i) regulatory concerns of HF producers or purchasers; and (k) market or industry shares in the alleged market for HF.

19.     All documents relating to Lucite's or INEOS's analysis of increases in costs in the sale of HF, including, but not limited to, increased costs for fluorspar and other raw materials, energy costs, labor costs and transportation and shipping costs.

20.     All documents relating to any analysis by Lucite or INEOS or any third party relating to competition, cost conditions, and market developments in the sale of fluorspar, HF, or refrigerants, including without limitation any such analysis by financial analysts, consulting firms or other third-party observers.

21.     All documents relating to the costs of producing HF, including without limitation documents and communications relating to costs for (a) fluorspar; (b) other direct or indirect inputs into the production of HF; (c) energy; (d) labor; (e) transportation; and (f) shipping.

22.     Documents sufficient to show, on a monthly basis, the price of HF in the marketplace.

23.     All documents, from any time, relating to competition in the refrigerant business, including without limitation documents and communications relating to (a) competition between INEOS and Honeywell for the sale of refrigerants; (b) industry shares or shares of sales

8

in the refrigerant business; and (c) any analysis by INEOS or any third party relating to the refrigerant business.

24.    All documents, from any time, relating to competition in the fluorspar business, including without limitation documents and communications relating to (a) industry shares or shares of sales in the sale of fluorspar; and (b) any analysis by Lucite or INEOS or any third party relating to the fluorspar business.

25.    All documents relating to any actual or potential damages that INEOS has or alleges that is has suffered as a result of Honeywell's conduct, as alleged in INEOS's Complaint, including without limitation all documents and communications relating to the calculation or mitigation of any such damages.

26.    To the extent not requested above, all calendars, personnel files, and documents relating to the subject matter of these Requests (including without limitation the HF Contract, the Third Amendment to the HF Contract, the Heads of Agreement, any hardship provision in any contract involving Lucite or INEOS at any time, Lucite's or INEOS's efforts to acquire HF from any source, Lucite's or INEOS's use of HF, competition in the sale of HF, the costs of producing HF, the market price of HF, competition in the refrigerant business, and competition in the fluorspar business) within the possession or control of those Lucite's or INEOS's employees or consultants identified on the parties' disclosures (a) Ron Coyle; (b) Sean Cunningham; (c) Joseph A. Cutroneo; (d) Tobias Hanneman; (e) Robert Learman; (d) Eric McLaughlin; (f) John Pacillo; (g) David Price; (h) Angela Tracy; (i) Kim Wall; (j) Ian Menzies; and (k) Tim King.

27.    To the extent not requested above, all documents relating to the subject matter of INEOS's Complaint.

28.    All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Quimica Fluor.

29.    All documents relating to the negotiation, execution, performance or

interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Interdynamics, Inc.

33.    All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and PPG Industries.

34.    All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Dow Chemical.

35.    All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and Ineos Chlor Americas, Inc.

36.    To the extent not covered by previous requests, all documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and any supplier of TCE.

37.    To the extent not covered by previous requests, all documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or Ineos and any supplier of HF.

# EXHIBIT 7

**To the Declaration of Andrew R. Dunlap in Support of
Honeywell's Motion to Compel Documents From Third Party Lucite International**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| INEOS FLUOR AMERICAS LLC, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | **C.A. No. 06-189 (SLR)** |
| ) | (District of Delaware) |
| HONEYWELL INTERNATIONAL INC., ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## NONPARTY LUCITE INTERNATIONAL'S RESPONSES AND OBJECTIONS TO DEFENDANT HONEYWELL'S SUBPOENA AND REQUEST FOR PRODUCTION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, nonparty Lucite International Inc. ("Lucite") hereby responds and objects to the subpoena duces tecum issued by the United States District Court for the Western District of Tennessee and served on Lucite by defendant Honeywell International Inc. ("Honeywell") on February 13, 2007.

## GENERAL OBJECTIONS

1.  Lucite objects to each Definition, Instruction and Request that places a requirement or obligation upon Lucite beyond the requirements and obligations imposed by the Federal Rules of Civil Procedure or a Rule of this Court. Lucite will answer each Request in accordance with such rules.

2.  Lucite objects to each Request to the extent that it requests production of documents not within Lucite's possession, custody, or control.

CTDOCS:18638.2

3.  Lucite objects to each Request to the extent that it calls for the production of documents that are neither relevant to a claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.

4.  Lucite objects to each Request to the extent that it is unreasonably cumulative or duplicative.

5.  Lucite objects to each Request to the extent that it is vague or ambiguous.

6.  Lucite objects to each Request to the extent that it is oppressive, overly broad or unduly burdensome.

7.  Lucite objects to each Definition, Instruction and Request that purports to require identification and disclosure of documents and information that were prepared in anticipation of litigation; constitute attorney work product; disclose the mental impressions, conclusions, opinions or legal theories of any attorney or other representative of Lucite; contain privileged attorney-client communications; or are otherwise protected from disclosure.  Lucite hereby claims such privileges and protections to the extent implicated by each Definition, Instruction or Request and will exclude privileged and protected information from its responses to Honeywell's Requests.

8.  Nothing contained in these Responses is intended as, or shall in any way be deemed, a waiver of any attorney-client privilege, any work product protection, or any other applicable privilege, immunity, doctrine, or protection.  Inadvertent production of any document that is subject to any privilege or confidentiality protection, in whole or in part, shall not constitute a waiver of any privilege or of any other ground for objection to discovery of such document, the information contained therein, or the subject matter thereof.  Nothing contained in these

Responses shall be deemed to impair Lucite's right to object to the use of such document or the information contained therein.

9.    Lucite objects to Honeywell's Definition No. 6 of "Hardship provision" to mean "any provision in a contract for the sale or purchase of florine-based [sic] chemicals or products (or raw materials used for same) that causes a change in a party's obligations, or provides for discussions regarding the same, based on the occurrence of an event causing a hardship occurring subsequent to the execution of the contract," to the extent that such definition is purported to have any applicability or significance broader than the instant Request for the Production of Documents.

10.    Lucite objects to Honeywell's Definition No. 13 of "INEOS" to mean "Plaintiff INEOS Fluor Americas LLC, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries, affiliates or parents of any of the foregoing entities; all past or present joint ventures, partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a limited partner; all past or present officers, directors, employees, and agents, including, without limitation, attorneys, accountants, auditors, consultants and other professional persons or experts, and any investigators or other persons acting on behalf or at the direction of any such person, of any of the foregoing entities." Lucite objects to this Definition on the grounds that it is overly broad, but Lucite will produce relevant, non-privileged documents in its possession, custody or control relating to its work for INEOS.

11.    Lucite objects to Honeywell's Definition No. 14 of "Lucite" as "Lucite International, and its employees, principals, directors, agents, attorneys, other representatives, and any and all predecessor companies and/or successors thereof; all past or present divisions, subsidiaries,

affiliates or parents of any of the foregoing entities; all past or present joint ventures,

partnerships or limited partnerships of which any of the foregoing entities is a joint venturer or a

limited partner; all past or present officers, directors, employees, and agents, including, without

limitation, attorneys, accountants, auditors, consultants and other professional persons or experts,

and any investigators or other persons acting on behalf or at the direction of any such person, of

any of the foregoing entities." Lucite objects to this Definition on the grounds that it is overly

broad, vague, and ambiguous and seeks to impose an obligation on Lucite to produce documents

that are not within its possession, custody, or control.  Additionally, Lucite objects to this

definition to the extent it includes entities beyond Lucite International Inc., the only entity within

the definition that did work on behalf of plaintiff INEOS Fluor Americas LLC.

      12.  Lucite objects to Honeywell's Definition No. 17 of "Refrigerant business" to mean

"the development, production and sale of products used in the development, manufacture and

operation of commercial and consumer cooling and refrigeration systems or products" on the

grounds that the "refrigerant business" is not relevant to a claim or defense of any party and

requests for production incorporating this Definition are therefore overly broad and not

reasonably calculated to lead to the discovery of admissible information.

      13.  Lucite objects to Honeywell's Instruction No. 20 ("Each document is to be produced

along with all non-identical drafts thereof in its entirety, without abbreviation or redaction.") to

the extent that it purports to call for the production of documents or things protected by the

attorney-client privilege, work product doctrine, or other applicable privilege.  Lucite reserves

the right to withhold or redact documents or things responsive to this Request for Production to

the extent such documents or things, or portions thereof, are protected from disclosure by any

applicable privilege.

14. Lucite objects to Honeywell's Instruction No. 22 ("The source(s) or derivation of each document produced shall be specifically identified.") to the extent that it purports to place requirements on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Subject to this Objection and to the General Objections, Lucite will produce relevant non-privileged documents from its files.

15. Lucite objects to Honeywell's Instruction No. 24 ("In the event that any document called for by these Requests or subsequent Requests has been destroyed or discarded, that document is to be identified by stating: (i) the author(s), addressee(s), and any indicated or blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.") on the grounds that it is impracticable and unduly burdensome. Documents responsive to this Request for Production may date back as far as January 1, 2003. For the most part, Lucite has no method of identifying documents that may have been discarded or destroyed at any time between January 1, 2003 and the present and does not maintain the information requested by this Instruction in the normal course of its business.

16. Lucite objects to Honeywell's Instruction No. 25 ("If any portion of any document is responsive to any Request, the entire document shall be produced, including, but not limited to, all cover sheets, appendices, or attachments.") to the extent that it purports to call for the production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege. Lucite reserves the right to withhold or redact documents

or things responsive to this Request for Production to the extent such documents or things, or portions thereof, are protected from disclosure by any applicable privilege.

17. Lucite objects to Honeywell's Instruction No. 28 ("These Requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.") on the grounds that it seeks to impose a requirement on Lucite beyond those imposed by Rule 45 of the Federal Rules of Civil Procedure or the Rules of this Court.

18. These Responses shall in no way be construed as a concession that any Definition or Instruction in Honeywell's Request for Production of Documents is correct, appropriate, or binding on Lucite and shall in no way be construed as a waiver of any of Lucite's objections, including without limitation, objections regarding the discoverability or admissibility of documents or other evidence.

19. Lucite objects to these Requests on the grounds that they are virtually identical in substance to document requests served on plaintiff INEOS Fluor Americas LLC with little, if any, effort to adapt them specifically to Lucite and, in particular, in a manner "to avoid imposing undue burden or expense on" Lucite, as required by Rule 45(c)(1) of the Federal Rules of Civil Procedure. *See, e.g.*, Instruction No. 27, which refers to INEOS rather than Lucite, and Request Nos. 15-18, 25, and 27, which seek documents based on INEOS's allegations.

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1:**

Documents sufficient to show the corporate structure of Lucite including all parent, subsidiary, and affiliated companies.

**RESPONSE TO REQUEST NO. 1:**

Lucite objects to the production of documents regarding Lucite's parent, subsidiary, and affiliated companies on the grounds that such documents are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 2:**

Documents sufficient to show Lucite's organizational and management structure, including without limitation organizational charts and job descriptions.

**RESPONSE TO REQUEST NO. 2:**

Lucite objects to this Request on the grounds that it seeks documents not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 3:**

All documents relating to Lucite's strategic business or marketing plans, including without limitation Lucite's or INEOS's plans for those aspects of its business utilizing HF.

**RESPONSE TO REQUEST NO. 3:**

Lucite objects to this Request on the grounds that the phrase "strategic business or marketing plans" is vague and ambiguous. Lucite objects to this Request because it is overly broad, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 4:**

All documents relating to any Lucite or INEOS board of directors meetings, including without limitation presentations to the Board and meeting minutes.

**RESPONSE TO REQUEST NO. 4:**

      Lucite objects to this Request on the grounds that it is overly broad, not relevant to a

claim or defense of any party, and not reasonably calculated to lead to the discovery of

admissible evidence.

**Request No. 5:**

All documents relating to Lucite's or INEOS's financial performance, including without
limitation annual reports, securities disclosures, audited financial statements, and internal
analyses and projections.

**RESPONSE TO REQUEST NO. 5:**

      Lucite objects to this Request on the grounds that it is overly broad, not relevant to a

claim or defense of any party, and not reasonably calculated to lead to the discovery of

admissible evidence.

**Request No. 6:**

All documents relating to the HF Contract, including without limitation documents and
communications relating to the negotiation, execution, performance, and interpretation of the HF
Contract.

**RESPONSE TO REQUEST NO. 6:**

      Lucite objects to this Request to the extent that it seeks production of documents or

things protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

      Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request.

**Request No. 7:**

All documents relating to the Third Amendment to the HF Contract, including without limitation
documents and communications relating to the negotiation, execution, performance, and
interpretation of the Third Amendment to the HF Contract.

## RESPONSE TO REQUEST NO. 7:

Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite has no responsive documents in its possession, custody, or control.

**Request No. 8:**

All documents relating to the Heads of Agreement, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of the Heads of Agreement.

## RESPONSE TO REQUEST NO. 8:

Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents responsive to this Request.

**Request No. 9:**

All documents, from any time, relating to any hardship provision in any contract involving Lucite or INEOS, including without limitation documents and communications relating to the negotiation, execution, performance, and interpretation of such hardship provisions.

## RESPONSE TO REQUEST NO. 9:

Lucite objects to this Request on the grounds that it is overly broad and vague, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of

documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents responsive to this Request concerning INEOS contracts in effect during the time period of January 1, 2003 to the present.

**Request No. 10:**

All documents relating to Lucite's or INEOS's efforts to acquire HF from any source, including without limitation documents and communications relating to (a) Lucite's or INEOS's actual or potential acquisition of HF from Honeywell, Solvay, Quimica Fluor, or any other person or entity; and (b) Lucite's or INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

**RESPONSE TO REQUEST NO. 10:**

Lucite objects to this Request to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents responsive to this Request to the extent they concern INEOS or Lucite acting solely on INEOS's behalf.

**Request No. 11:**

All documents relating to Lucite's or INEOS's communications, whether written or oral, with any person, company, or entity regarding the supply or potential supply of HF to INEOS, including without limitation (a) offers or solicitations made to Lucite or INEOS for the sale of HF to INEOS; (b) Lucite's or INEOS's actual or potential acquisition of HF from any source; and (c) INEOS's alleged inability to acquire HF from sources other than Honeywell, as discussed in Paragraph 35 of INEOS's Complaint.

**RESPONSE TO REQUEST NO. 11:**

       Lucite objects to this Request on the grounds that it is unreasonably cumulative and

duplicative. Lucite objects to this Request to the extent that it seeks to impose a requirement on

Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court.

Lucite objects to this Request to the extent that it seeks production of documents or things

protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

       Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request to the extent they concern INEOS or Lucite

acting solely on INEOS's behalf.

**Request No. 12:**

All documents relating to Lucite's or INEOS's knowledge or awareness of actual or potential
sources of HF, including without limitation all communications and documents relating to (a)
any person or entity able to or offering supply HF to Lucite or INEOS or any other person or
entity; and (b) any offers, discussions, communications, or (formal or informal) requests by any
person or entity to Lucite or INEOS relating to the actual or potential supply of HF to Lucite or
INEOS.

**RESPONSE TO REQUEST NO. 12:**

       Lucite objects to this Request on the grounds that it is unreasonably cumulative or

duplicative. Lucite objects to this Request to the extent that it seeks production of documents or

things protected by the attorney-client privilege, work product doctrine, or other applicable

privilege.

       Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request to the extent they concern INEOS or Lucite

acting solely on INEOS's behalf.

**Request No. 13:**

All documents relating to Lucite's or INEOS's use of HF, including without limitation (a) Lucite's or INEOS's volume requirements for HF; (b) Lucite's or INEOS's anticipated or actual costs for its HF purchases; (c) Lucite's or INEOS's anticipated and actual revenues from its HF-based businesses; (d) Lucite's or INEOS's potential or actual sources of HF; (e) Lucite's or INEOS's historic and prospective demand for HF; and (f) the prices of and customers for Lucite's or INEOS's HF-based products.

**RESPONSE TO REQUEST NO. 13:**

Lucite objects to this Request on the grounds that it is unreasonably cumulative or duplicative. Lucite objects to this Request, and subparts (c) and (f) in particular, on the grounds that it is overly broad, not relevant to a claim or defense of any party, and not reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and the General Objections, Lucite will produce any non-privileged documents responsive to subparts (a), (b), (d), and (e) of this Request to the extent they concern INEOS or Lucite acting solely on INEOS's behalf.

**Request No. 14:**

All documents relating to Lucite's or INEOS's communications with actual or potential HF producers regarding increased costs to produce HF and measures being taken to address these cost increases.

**RESPONSE TO REQUEST NO. 14:**

Lucite objects to this Request to the extent it is unreasonably cumulative or duplicative. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

CTDOCS:18638.2                                        12

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents responsive to this Request to the extent they concern INEOS or Lucite acting solely on INEOS's behalf.

**Request No. 15:**

All documents relating to conduct by Honeywell that INEOS alleges monopolized or attempted to monopolize the alleged relevant market.

## RESPONSE TO REQUEST NO. 15:

Lucite objects to this Request on the grounds that it is unintelligible because it requires Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Lucite has no documents in its possession, custody or control responsive to this request.

**Request No. 16:**

All documents relating to INEOS's allegations that Honeywell has monopoly power, or a dangerous probability of acquiring monopoly power, in the alleged relevant market.

## RESPONSE TO REQUEST NO. 16:

Lucite objects to this Request on the grounds that it is unintelligible because it requires Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

CTDOCS:18638.2

Lucite has no documents in its possession, custody or control responsive to this request.

**Request No. 17:**

All documents relating to INEOS's allegation that entry into the alleged relevant market would not occur in response to a small but significant price increase, as alleged in Paragraph 31 of the Complaint.

**RESPONSE TO REQUEST NO. 17:**

Lucite objects to this Request on the grounds that it is unintelligible because it requires Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Lucite has no documents in its possession, custody or control responsive to this request.

**Request No. 18:**

All documents relating to competition in the sale of HF, including without limitation documents and communications relating to (a) HF production costs; (b) HF pricing; (c) potential and actual supply sources of HF; (d) transportation and shipping of HF; (e) the supply of HF; (f) buyers and sellers of HF; (g) HF market participants; (h) competition among HF producers; (i) regulatory concerns of HF producers or purchasers; and (k) market or industry shares in the alleged market for HF.

**RESPONSE TO REQUEST NO. 18:**

Lucite objects to this Request on the grounds that it is unintelligible because it requires Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent it is unreasonably cumulative or duplicative. Lucite objects to this Request to the extent that it seeks

production of documents or things protected by the attorney-client privilege, work product

doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request

**Request No. 19:**

All documents relating to Lucite's or INEOS's analysis of increases in costs in the sale of HF, including, but not limited to, increased costs for fluorspar and other raw materials, energy costs, labor costs and transportation and shipping costs.

**RESPONSE TO REQUEST NO. 19:**

Lucite objects to this Request to the extent it is unreasonably cumulative or duplicative.

Lucite objects to this Request to the extent that it seeks production of documents or things

protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request in its possession, custody or control.

**Request No. 20:**

All documents relating to any analysis by Lucite or INEOS or any third party relating to competition, cost conditions, and market developments in the sale of fluorspar, HF, or refrigerants, including without limitation any such analysis by financial analysts, consulting firms or other third-party observers.

**RESPONSE TO REQUEST NO. 20:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents

that are not relevant to a claim or defense of any party or reasonably calculated to lead to the

discovery of admissible evidence, particularly with respect to refrigerants and with respect to the

sale of fluorspar or HF in a geographic market other than North America. Lucite objects to this

Request to the extent it is unreasonably cumulative or duplicative. Lucite objects to this Request

to the extent that it seeks production of documents or things protected by the attorney-client

privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request.

**Request No. 21:**

All documents relating to the costs of producing HF, including without limitation documents and communications relating to costs for (a) fluorspar; (b) other direct or indirect inputs into the production of HF; (c) energy; (d) labor; (e) transportation; and (f) shipping.

**RESPONSE TO REQUEST NO. 21:**

Lucite objects to this Request to the extent it is unreasonably cumulative or duplicative.

Lucite objects to this Request to the extent that it seeks production of documents or things

protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request.

**Request No. 22:**

Documents sufficient to show, on a monthly basis, the price of HF in the marketplace.

**RESPONSE TO REQUEST NO. 22:**

Lucite objects to this Request on the grounds that the phrases "the price of HF" and "in

the marketplace" are vague and ambiguous. Lucite objects to this Request to the extent it is

unreasonably cumulative or duplicative. Lucite objects to this Request to the extent that it seeks

production of documents or things protected by the attorney-client privilege, work product

doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-

privileged documents responsive to this Request.

CTDOCS:18638.2                                    16

**Request No. 23:**

All documents, from any time, relating to competition in the refrigerant business, including without limitation documents and communications relating to (a) competition between INEOS and Honeywell for the sale of refrigerants; (b) industry shares or shares of sales in the refrigerant business; and (c) any analysis by INEOS or any third party relating to the refrigerant business.

**<u>RESPONSE TO REQUEST NO. 23:</u>**

Lucite objects to this Request to the extent that it is overly broad in timeframe and in scope and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 24:**

All documents, from any time, relating to competition in the fluorspar business, including without limitation documents and communications relating to (a) industry shares or shares of sales in the sale of fluorspar; and (b) any analysis by Lucite or INEOS or any third party relating to the fluorspar business.

**<u>RESPONSE TO REQUEST NO. 24:</u>**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Lucite has no documents in its possession, custody or control responsive to this request.

**Request No. 25:**

All documents relating to any actual or potential damages that INEOS has or alleges that is [sic] has suffered as a result of Honeywell's conduct, as alleged in INEOS's Complaint, including without limitation all documents and communications relating to the calculation or mitigation of any such damages.

**RESPONSE TO REQUEST NO. 25:**

Lucite objects to this Request on the grounds that it is unintelligible because it requires

Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it

seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil

Procedure or the Rules of this Court.  Lucite objects to this Request to the extent that it seeks

production of documents or things protected by the attorney-client privilege, work product

doctrine, or other applicable privilege.

Lucite has no documents in its possession, custody or control responsive to this request.

**Request No. 26:**

To the extent not requested above, all calendars, personnel files, and documents relating to the
subject matter of these Requests (including without limitation the HF Contract, the Third
Amendment to the HF Contract, the Heads of Agreement, any hardship provision in any contract
involving Lucite or INEOS at any time, Lucite's or INEOS's efforts to acquire HF from any
source, Lucite's or INEOS's use of HF, competition in the sale of HF, the costs of producing HF,
the market price of HF, competition in the refrigerant business, and competition in the fluorspar
business) within the possession or control of those Lucite's or INEOS's employees or
consultants identified on the parties' disclosures (a) Ron Coyle; (b) Sean Cunningham; (c)
Joseph A. Cutroneo; (d) Tobias Hanneman; (e) Robert Learman; (d) Eric McLaughlin; (f) John
Pacillo; (g) David Price; (h) Angela Tracy; (i) Kim Wall; (j) Ian Menzies; and (k) Tim King.

**RESPONSE TO REQUEST NO. 26:**

Lucite objects to this Request to the extent that it is unintelligible and overly broad and

seeks documents that are not relevant to a claim or defense of any party or reasonably calculated

to lead to the discovery of admissible evidence.  Lucite objects to this Request on the grounds

that the phrase "subject matter of these Requests" is vague, indefinite, and ambiguous.  Lucite

objects to this Request on the grounds that it is unreasonably cumulative and duplicative.  Lucite

objects to this Request to the extent that it seeks production of documents or things protected by

the attorney-client privilege, work product doctrine, or other applicable privilege.  To the extent

this Request seeks documents described in previous Requests, Lucite incorporates and adopts by reference all its objections to such previous Requests.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents responsive to this Request.

**Request No. 27:**

To the extent not requested above, all documents relating to the subject matter of INEOS's Complaint.

**RESPONSE TO REQUEST NO. 27:**

Lucite objects to this Request on the grounds that it is unintelligible because it requires Lucite to determine what INEOS alleges and is vague and ambiguous and to the extent that it seeks to impose a requirement on Lucite beyond those imposed by the Federal Rules of Civil Procedure or the Rules of this Court. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

**Request No. 28:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and Quimica Fluor.

**RESPONSE TO REQUEST NO. 28:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 29:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and Interdynamics, Inc.

## RESPONSE TO REQUEST NO. 29:

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 33:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and PPG Industries.

## RESPONSE TO REQUEST NO. 33:

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 34:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and Dow Chemical.

**RESPONSE TO REQUEST NO. 34:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 35:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and INEOS Chlor Americas, Inc.

**RESPONSE TO REQUEST NO. 35:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 36:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and any supplier of TCE.

**RESPONSE TO REQUEST NO. 36:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

**Request No. 37:**

All documents relating to the negotiation, execution, performance or interpretation of any actual or potential contract, agreement, letter of intent, or "Heads of Agreement," between Lucite or INEOS and any supplier of HF.

**RESPONSE TO REQUEST NO. 37:**

Lucite objects to this Request to the extent that it is overly broad and seeks documents that are not relevant to a claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence. Lucite objects to this Request to the extent that it seeks production of documents or things protected by the attorney-client privilege, work product doctrine, or other applicable privilege.

Subject to these Objections and to the General Objections, Lucite will produce any non-privileged documents concerning INEOS responsive to this Request.

AXINN, VELTROP & HARKRIDER LLP

Dated: February 23, 2007

Richard S. Order
Mark D. Alexander
90 State House Square
Hartford, CT 06103
Tel: 860-275-8100

*Attorneys for Nonparty Lucite International Inc.*

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing was served by first class United States mail, postage prepaid, this 23rd day of February, 2007 to:

Martin P. Tully, Esq.
Jason A. Cincilla, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899

Yosef J. Riemer, Esq.
Andrew R. Dunlap, Esq.
Michael D. Reisman, Esq.
Kirkland & Ellis LLP
153 East 53rd Street
New York, NY  10022
**(Also by email)**

Mark L. Kovner, Esq.
Michael S. Becker, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC  20005-5793

By: _____
      Richard S. Order, Esq.
      Axinn, Veltrop & Harkrider LLP

# EXHIBITS 8-11

**To the Declaration of Andrew R. Dunlap in Support of
Honeywell's Motion to Compel Documents From Third Party Lucite International**

# REDACTED

# EXHIBIT 12

**To the Declaration of Andrew R. Dunlap in Support of
Honeywell's Motion to Compel Documents From Third Party Lucite International**

Slip Copy

2007-1 Trade Cases P 75,557

(Cite as: 2007 WL 137152 (D.Del.))

United States District Court,
D. Delaware.

**In re: INTEL CORP. MICROPROCESSOR
ANTITRUST LITIGATION,
ADVANCED MICRO DEVICES, INC. and AMD
International Sales & Service, Ltd.,
Plaintiffs,
v.
INTEL CORPORATION and Intel Kabushiki
Kaisha, Defendants.
Phil PAUL, on behalf of himself and all others
similarly situated, Plaintiffs,
v.
INTEL CORPORATION, Defendant.**

**No. 05-1717-JJF, CIVA 05-441-JJF, CIVA 05-
485-JJF.**

Jan. 12, 2007.

David Mark Balabanian, Joy K. Fuyuno,
Christopher B. Hockett, Bingham McCutchen LLP,
San Francisco, CA, Harvey W. Gurland, Duane
Morris, Miami, FL, Jef Feibelman, Burch Porter &
Johnson, Memphis, TN, Jerry W. Laughlin, Rogers
Laughlin Nunnally Hood & Crum, Greeneville, TN,
Richard L. Horwitz, W. Harding Drane, Jr., Potter
Anderson & Corroon, LLP, Wilmington, DE,
Robert W. Coykendall, Morris Laing Evans Brock
& Kennedy CHTD., Wichita, KS, Richard A.
Ripley, Daniel S. Floyd, Darren B. Bernhard, Peter
E. Moll, Robert E. Cooper, for In re Intel
Corporation Microprocessor Antitrust Litigation.

James L. Holzman, Prickett, Jones & Elliott,
P.A., Wilmington, DE, Allyson B. Baker, Brent W.
Landau, Daniel A. Small, Ian Otto, Nathan Cihlar,
for Plaintiffs.

Thomas G. Macauley, Zuckerman Spaeder LLP,
Wilmington, DE, for Defendants.

Jeffery N. Luthi, Washington, DC, pro se.

ORDER

FARNAN, J.

**\*1 WHEREAS,** the Special Master issued a
Report and Recommendation (D .I. 365 in 05-md-

1717; D.I. 278 in 05-441; D.I. 262 in 05-485) dated
December 15, 2006, concerning Motions To
Compel filed by AMD and the Class Plaintiffs;

WHEREAS, no Objections to the Report and
Recommendation have been filed (D.I.279, 280);

NOW THEREFORE, IT IS HEREBY ORDERED
that the Special Master's Report and
Recommendation (D.I. 365 in 05-md-1717; D.I.
278 in 05-441; D.I. 262 in 05-485) is ADOPTED.

SPECIAL MASTER'S REPORT AND
RECOMMENDATIONS ON PLAINTIFFS'
MOTIONS TO COMPEL;

POPPITI, J.

GRANT OF MOTIONS RECOMMENDED.
INTRODUCTION

The captioned cases are antitrust actions brought
against Intel Corporation [FN1] ("Intel") as the
manufacturer of microprocessors that run the
Microsoft Windows and Linux families of operating
systems (the "x86 Microprocessor Market"), a
market in which Intel is alleged to hold worldwide
market share measured as 80% of the market in
units and 90% of the market in revenues. The 05-
441 action is brought by Advanced Micro Devices,
Inc. and AMD International Sales & Service, Ltd.
(collectively, "AMD"), an American-based
manufacturer and the only domestic competitor of
Intel in the x86 Microprocessor Market.

FN1. Intel Kabushiki Kaisha is also a named
defendant in the AMD case, Case No. 05-441, and
AMD refers to both Intel entities, collectively, as
"Intel."

The 05-485 action is brought on behalf of a class
of consumers who allege economic injury resulting
from Intel's alleged anticompetitive and
monopolistic practices. The 05-485 action has been
consolidated with over 70 other consumer-related
actions by the Judicial Panel on Multidistrict
Litigation and assigned to this Court, where it is
docketed as MDL Docket No. 05-1717
(collectively, the "Class Litigation"). As used
herein, the term "Class Plaintiffs" refers to the
plaintiffs in the Class Litigation and the term

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy                                                                                           Page    4
(Cite as: 2007 WL 137152, *1 (D.Del.))

"Plaintiffs" means AMD and the Class Plaintiffs, collectively.

There are also several antitrust actions pending in foreign tribunals and other jurisdictions. The first is litigation in Japan between AMD and Intel (the "Japan Litigation"). [FN2] Another group of litigation involves antitrust class actions pending before the California state courts (collectively, the "California Class Litigation"). [FN3]

> FN2. The Japan Litigation includes litigations captioned AMD Japan K.K. v. Intel K.K., Case No. Heisei 17(Wa) No. 13151 (Tokyo Dist. Ct., 6/30/05), and AMD Japan K.K. v. Intel K.K., Case No. Heisei 17(Wa) No. 4 (Tokyo High Court. 6/30/05) and all proceedings related thereto.

> FN3. The California Class Litigation includes actions filed by or on behalf of a putative California class of indirect purchasers of Intel microprocessors, including certain actions which have been or will be transferred to the Honorable Jack Komar of the Santa Clara County Superior Court by the Judicial Council for the State of California under JCCP 4443, together with actions originally filed in that Court including Melkonians v. Intel Corp., Santa Clara County Superior Court Case No. 1-05-CV-045077; Macias v. Intel Corp., formerly in the Los Angeles County Superior Court Case No. BC336897; Toronto v. Intel Corp., formerly in the San Diego County Superior Court Case No. GIC850053; Groves v. Intel Corp., Santa Clara County Superior Court Case No. 1-05-CV-053490; Wangler v. Intel Corp., formerly in the Los Angeles County Superior Court Case No. BC340460; Pishvaee v. Intel Corp., Santa Clara Superior Court Case No. 1-05-CV-053300; and other actions made part of JCCP 4443.

The matter sub judice comes before me, as Special Master, [FN4] on the motions of AMD (D.I. 236 in Case No. 05-441) and the Class Plaintiffs (D.I. 300 in Case No. 05-1717) [FN5] to compel Intel to produce certain categories of discovery materials that relate to Intel's business dealings and sales transactions with its customers in foreign countries, for the asserted purpose of ascertaining whether those dealings and transactions create barriers to competition that unlawfully exclude AMD from competing in the global market for x86 microprocessors.

> FN4. The Order appointing Special Master is docketed at D.I. 106 in Case No. 05-441, at D.I. 60 in the 05-1717 MDL docket, and at D.I. 21 in Case No. 05-485.

> FN5. Unless otherwise specified, the docket items cited hereinafter refer only to the docket in Case No. 05-441.

For the reasons discussed further herein, the Special Master concludes that Plaintiffs' motions to compel should be GRANTED.

BACKGROUND

On October 30, 2006, AMD and the Class Plaintiffs filed their respective motions to compel Intel to produce certain categories of discovery materials related to Intel's dealings and sales transactions with its customers in foreign countries. Intel opposes the production of these discovery materials based, in part, upon this Court's Memorandum Opinion and Order dated September 26, 2006 dismissing certain "foreign commerce claims" (the "September 26, 2006 Order"). D.I. 217-18. In Intel's view, the September 26, 2006 Order--and the Court's analysis of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a (the "FTAIA") on which that Order is based-- strips all claims based on Intel's foreign conduct out of these cases and, therefore, renders irrelevant any discovery about Intel's foreign conduct.

*2 As background for the analysis of whether the subject discovery is properly within the scope of discovery with respect to the remaining claims in these litigations, the Special Master briefly reviews the September 26, 2006 Order and the parties' differing views on the impact of that Order.

September 26, 2006 Order Dismissing Foreign Claims

Shortly after discovery commenced, Intel filed a motion to dismiss certain of the claims asserted by AMD's Complaint on the bases that the Court lacked subject matter jurisdiction over--and AMD lacked standing to assert--those claims. [FN6] D.I. 111-112. As framed by Intel's moving papers, [FN7] Intel sought the dismissal of:

> FN6. On November 3, 2006, Intel filed a motion to

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *2 (D.Del.))

dismiss similar foreign conduct claims asserted by the Class Plaintiffs' Complaint. D.I. 311-12 in the 05-1717 MDL docket. That motion is currently pending decision by the Court.

FN7. The issues that Intel framed for the Court-- and the limitations of those issues--are discussed in greater detail infra at pp. 12-14.

. [AMD's claims for] damages and injunctive relief under the U.S. antitrust laws for those claims based on alleged Intel business practices affecting the sale of AMD's German-made microprocessors in foreign countries, claims the FTAIA places outside the reach of federal jurisdiction.
D.I. 112 at p. 1; and id. at p. 30 (same).

On September 26, 2006, the Court granted Intel's motion to dismiss, reasoning that:
[I]t lacks jurisdiction over AMD's claims that are based on lost sales of AMD's German-made microprocessors to foreign customers, as alleged in (1) paragraphs 40-44, 54, 57, and 74 relating to Japanese OEMs; (2) paragraphs 55, 56, 65, 75, 75 and 81 related to European OEMs; (3) paragraphs 81, 83 and 86 relating to alleged interference with the launch of an AMD-based system by foreign OEMs or sales to these foreign OEMs; (4) paragraphs 89, 93, 94 relating to interference with foreign distributors' sales in foreign countries; (5) paragraphs 100 and 101 relating to interference with sales to retailers in Europe; and (6) paragraph 106, which alleges interference with the German retail chain Vobis.
D.I. 217 at p. 7. The Court concluded that "it lack[ed] subject matter jurisdiction under the FTAIA over AMD's claims, to the extent those claims were based on foreign conduct and foreign harm." D.I. 217 at p. 15 (emphasis added).

With respect to AMD's standing, the Court concluded:
For the reasons discussed in the context of the FTAIA, the Court concludes that the alleged injuries suffered by AMD as a result of Intel's foreign conduct are foreign injuries that occurred in foreign markets. Because such foreign injuries are "not the type of injury Congress intended to prevent through the [FTAIA] or the Sherman Act," the Court concludes that AMD lacks standing to pursue its claims based on foreign injury. Accordingly, for this additional reason,

the Court will dismiss AMD's claims for foreign injuries arising as a result of Intel's alleged foreign conduct.
D.I. 217 at p. 17. Thus, like the dismissal based on lack of subject matter jurisdiction, the allegations dismissed by the Court because of AMD's lack of standing were based upon both foreign conduct and foreign harm, specifically addressed to lost and excluded sales of AMD's German-made microprocessors to foreign customers.

*3 Accordingly, in its final holding, the Court dismisses "AMD's claims for foreign injuries arising as a result of Intel's alleged foreign conduct." D.I. 217 at p. 17.

Plaintiffs' Motions to Compel

Following the issuance of the Court's September 26, 2006 Order, Intel revised its objections to the Plaintiffs' discovery requests. As a result of that Order, Intel takes the position that it will not produce certain categories of information responsive to the Plaintiffs' discovery requests because, in Intel's view, those categories of information are relevant only to claims that have been stricken from these cases. In response, the Plaintiffs filed the motions to compel that are sub judice.

In seeking to compel the requested discovery from Intel, AMD disputes that its ability to take discovery of Intel's foreign conduct is precluded by the September 26, 2006 Order. AMD characterizes the issue as follows:
This motion presents the single, overriding issue of whether Judge Farnan's September 26, 2006 decision is the discovery showstopper Intel suggests. It is not. Granted, the decision precludes AMD from pursuing damage claims based on "lost sales of AMD's German-made microprocessors to foreign customers" but it recognizes AMD's right to pursue claims for lost sales to domestic customers of microprocessors regardless of the product's origin (domestic commerce claims) and for lost sales of American-made microprocessors to foreign customers (export commerce claims). And, on its face, it leaves open, as it necessarily must, all discovery relevant to either remaining claim.
D.I. 236 at p. 3 (quoting D.I. 217 at p. 3) (emphasis in original).

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *3 (D.Del.))

Page   6

Additionally, AMD argues that the subject discovery is relevant to its proof of the key elements of its Sherman Act claims, and that it is necessary to show that Intel (1) has market power in the relevant market; (2) has acquired or maintained its monopoly through anticompetitive means; and (3) has engaged in exclusionary conduct in relation to the overall relevant market, so as to violate U.S. antitrust laws. D.I. 236 at pp. 12-17.

Intel's Opposition to Motions to Compel

Intel raises four main arguments in opposition to AMD's motion to compel. The first argument in opposition is that AMD's export commerce claims are essentially the same claims that the Court dismissed on jurisdictional and standing grounds by its September 26, 2006 Order. [FN8] D.I. 243 at pp.  1-3, 9-17. Intel's argument continues that, because these claims have been stricken from these cases, the discovery has sought no relevancy to those issues remaining in the cases. Id. at pp. 3-4.

FN8. As discussed infra at pp. 11-14, the Special Master treats this argument as a threshold matter.

Intel's second main argument is that, even if some export commerce claims arguably remain, AMD is barred from relief by the statute of limitations because it ceased domestic manufacture of microprocessors in 2002. [FN9] D.I. 243 at pp. 17-19.

FN9. As discussed infra at p. 8, the Special Master has advised the parties that such substantive law claims are not properly before the Special Master.

The third main argument raised by Intel is that the FTAIA bars AMD from discovery of Intel's foreign conduct after AMD ceased its domestic manufacture of microprocessors in 2002. D.I. 243 at pp. 19-21.

*4 Finally, Intel raises several arguments that are intended to refute AMD's position as to the relevancy of the subject discovery to the remaining claims in these cases. D.I. 243 at pp. 21-29.

November 29, 2006 Oral Argument

On November 29, 2006, the Special Master conducted a hearing on the motions to compel. D.I. 274. As a threshold matter, the Special Master

discussed the Order Appointing Special Master--and the constitutional underpinnings of Fed.R.Civ.P. 53--that limit the Special Master's role to assisting the Court with discovery matters. Id. at 4:1-5:6. See also D.I. 236 at ¶ 3. ("[The Special Master] shall hear, resolve and make rulings on all disputes regarding discovery and, when appropriate, enter orders setting forth his rulings.") (Emphasis added).

In this regard the Special Master made clear that the Special Master does not have the authority to address the substantive law matters raised by the parties, as those matters are within the exclusive province of the Court.   Specifically, the Special Master declined to address the Class Plaintiffs' suggestion that the Special Master opine to the Court--or speculate on what the Court might conclude--regarding to the substantive law issues raised by Intel's pending motion to dismiss certain claims in the Class Litigation. D.I. 274 at 5:6-16. The Special Master also expressly declined Intel's suggestion that the Special Master make substantive law determinations with respect to the foreign commerce/export claims, with respect to both the viability of the claims and the statute-of-limitations argument raised by Intel's opposition papers. Id.  at 5:17-7:2.

The ensuing hearing focused on a discussion of the parties' respective positions on the scope of discovery dispute framed by the motions to compel. At the hearing, the Special Master asked for clarification of whether the parties were in agreement that the discovery materials that are the subject of the parties' dispute can, as AMD suggests, be generally as described documents--including contracts and correspondence exchanged during sales negotiations--that fall into one of the following categories that evidence:
(a) limitations on a customer's freedom to purchase microprocessors from AMD;
(b) requirements that a customer purchase specified amounts or percentages from Intel;
(c) other coercion, including threats of retaliation or retribution, for doing business with AMD (or not doing sufficient business with Intel);
(d) any other quantity-forcing behavior;
(e) other "foreign conduct" intended to handicap AMD in the marketplace, make its products less desirable to customers and consumers, or raise its costs of doing business; and
(f) Intel's internal communications bearing on any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

of the forgoing.
D.I. 274 at 7:11-8:20 (quoting D.I. 236 at pp. 2-3). Although Intel takes exception with the argumentative language used to describe the categories, it agreed that "in general what was presented broadly summarized [the] categories" in dispute. D.I. 274 at 42:18-21.

*5 These general categories of discovery that the parties agree are the subject of the instant motions to compel are hereinafter referred to, collectively, as the "Foreign Conduct Discovery Materials." The parties further agree that it would not be productive at this point for the Special Master to review each individual document request that relates to the disputed categories, and that judicial economy would be best served by a decision concerning the disputed categories of documents. D.I. 274 at 42:24-44:7 and 99:10-101:7.

The Special Master now turns to his analysis of why Plaintiffs' motions to compel Intel to produce the Foreign Conduct Discovery Materials should be granted.

## DISCUSSION

### A. Governing Law–Scope of Discovery

Discovery in these cases is governed by the Federal Rules of Civil Procedure. With respect to the scope of discovery, Rule 26 provides, in pertinent part, that a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1) (emphasis added).

The party seeking discovery has the burden of demonstrating its merits. See, e.g., McLaughlin v.

Copeland, 455 F.Supp. 749, 753 (D.Del.1978). However, "discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." La Chemise Lacoste v. Alligator Co., Inc., 60 F.R.D. 164, 171 (D.Del.1973).

The broad scope of discovery permitted by Rule 26 has been held to be particularly appropriate in antitrust cases. U.S. v. Dentsply Int'l, Inc., No. Civ. A-99-5 MMS, 2000 WL 654286, *5 (D.Del. May 10, 2000) ("The fact that the United States is the relevant market in this case does not necessarily limit discovery to the United States ... A 'general policy of allowing liberal discovery in antitrust cases' has been observed by this Court because 'broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." ') See also, In re Plastics Additives Antitrust Litigation, No. Civ. A. 03-2038 2004 WL 2743591, at *14 (E.D.Pa. Nov.29, 2004) ("It is well-settled that courts presiding over antitrust cases generally take a liberal view of relevance in determining scope of discovery.")

In determining whether the discovery sought by the motions to compel is within the scope permitted by Fed.R.Civ.P. 26, the Special Master turns first to a brief examination of the claims that remain in the Complaint following the September 26, 2006 Order. In this regard, the Special Master--like the parties in their arguments--focuses on the claims asserted by AMD for several reasons. First, a recently filed motion to dismiss certain of the foreign conduct claims in the Class Litigation is currently pending before the Court. D.I. 311-12 in the 05-1717 MDL docket and D.I. 217-18 in Case No. 05-485. Additionally, although the damages differ, the Sherman Act claims asserted by the Class Plaintiffs are either identical to, or derivative of, those asserted by AMD. Finally, Intel has agreed that it will produce the Foreign Conduct Discovery Materials to the Class Plaintiffs if it is compelled to produce them to AMD. D.I. 274 at 76:23-77:2.

### B. The Sherman Act Claims

*6 According to the Plaintiffs, the discovery sought relates to claims asserted under Section 2 of the Sherman Act. The Sherman Act provides, in relevant part, that:

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding ten years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2 (2004).

AMD asserts two distinct categories of claims under Section 2 that are alleged to arise from Intel's monopolistic behavior and result in foreclosure of AMD from sales of x86 microprocessors in the global market. The first category is AMD's "domestic commerce claims" for lost and foreclosed sales to U.S. customers, irrespective of where the microprocessors were manufactured. The second category is AMD's "export commerce claims" for lost and foreclosed sales of American-made microprocessors to foreign customers. D.I. 236 at p. 3. AMD contends that the Foreign Conduct Discovery Materials are relevant to both categories of claims.

Before discussing the relevancy of the Foreign Conduct Discovery Materials to the remaining claims, the Special Master believes it important--as a threshold issue--to discuss Intel's argument with respect to the continued viability of the export commerce claims.

Intel disputes that the export commerce claims are still part of these cases in light of the September 26, 2006 Order. Even if they are, Intel argues that they should not be considered given the perceived deficiencies in the form of pleading:

I want to emphasize [that the foreign export claim] has never been the gravamen of AMD's claim. Indeed it is literally one paragraph, 129, export business, that's all we have. That is plainly insufficient for the court to base a determination that jurisdiction exists for those claims.

\* \* \*

I can easily understand why a court may say that [conclusory] allegation is insufficient to establish jurisdiction, which in turn might explain why

[Judge Farnan] then chose to just simply strike all of the foreign conduct allegations.
D.I. 274 at 68:21-69:4 and 71:10-15. Intel also raises statute-of-limitations issues based on AMD's 2002 discontinuance of the manufacture of microprocessors at its FAB 25 plant in Austin, Texas. D.I. 243 at pp. 17-20.

Having previously advised the parties that substantive law issues are not properly before the Special Master, supra at p. 8, the Special Master turns to Intel's argument that the export commerce claims are effectively disposed of by virtue of the September 26, 2006 Order.

In framing its motion to dismiss the foreign conduct claims for the Court, Intel specifically defined the subject claims to be those based upon the foreign sale of AMD's foreign-manufactured microprocessors:

   **\*7**  Intel filed this "motion to dismiss the foreign commerce claims of [AMD] for ... relief under the U.S. antitrust laws for claims based on ... the sale of AMD's German-made microprocessors in foreign countries." D.I. 112 at p. 1.
   "Intel [sought] an order dismissing or striking all claims that are based on alleged lost sales of AMD's German-made microprocessors to foreign customers." D.I. 112 at p. 30.
   The proposed form of order accompanying Intel's motion to dismiss provided: "in particular, the Court dismisses all claims that are based on alleged lost sales of AMD's German-made microprocessors to foreign customers." D.I. 111, Proposed Order at p. 2.

The Special Master concludes that not only did Intel limit the issue before the Court to claims based on foreign harm caused by foreign conduct, but Intel expressly excluded certain of AMD's foreign commerce claims from its motion to dismiss:
   "The present motion is not addressed to AMD's federal or state allegations of lost sales of its German-made microprocessors to U.S. customers." D.I. 112 at p. 5 n. 2 (emphasis added).
   "While AMD may seek relief in this action for alleged domestic injury due its U.S. export and import commerce under the FTAIA, AMD may not pursue claims of injury arising out of conduct causing only direct harm to foreign commerce." D.I. 112 at p. 29.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *7 (D.Del.))

The Special Master concludes that Intel's argument that the export commerce claims were not adequately pleaded could have been raised by its motion to dismiss, but clearly were not. The Special Master reads the September 26, 2006 Order to provide only the specific relief that was actually requested by Intel.   In this regard, the Special Master concludes that the Court's final holding-- dismissing "AMD's claims for foreign injuries arising as a result of Intel's alleged foreign conduct" (D.I. 217 at p. 17)--is tailored to the specific relief that Intel sought. That relief was not requested to encompass or strike--and did not encompass or strike--paragraph 129 of AMD's Complaint.

Accordingly, the Special Master concludes that AMD's export commerce claims remain viable claims in these cases.

C.  Relevancy of Foreign Conduct Discovery Materials

Facts germane to any claim or defense in the pleadings are properly the subject of discovery. See In re PE Corp. Securities Litigation, 221 F.R.D. 20, 24 (D.Conn.2003); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-52, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("it is proper to deny discovery of [information] that is relevant only to claims or defenses that have been stricken or to events that occurred before applicable limitations period, unless the information sought is otherwise relevant to issues in the case" ) (emphasis added). Accordingly, if the Foreign Conduct Discovery Materials are relevant to export commerce claims and/or domestic commerce claims, they are discoverable.

It is axiomatic that exclusionary conduct abroad would be relevant to a Sherman Act claim premised upon lost and foreclosed sales of American-made products to foreign customers. As succinctly argued by AMD:

*8 As I think you can observe, in terms of establishing a viable export claim, it would be silliness to argue that foreign misconduct is not relevant.  It is the only conduct that is relevant since by definition export customers [can only] be foreign concerns.
D.I. 274 at 18:10-16.

To prove its export commerce claims, AMD must

introduce evidence of exclusionary conduct on the part of Intel that foreclosed opportunities for AMD to sell its American-made microprocessors to foreign customers. [FN10]  Accordingly, the Special Master concludes that the Foreign Conduct Discovery Materials are reasonably calculated to lead to the discovery of exclusionary conduct that would support a foreclosure claim in connection with the sale of American-made x86 microprocessors abroad. Thus, while it would be proper to deny discovery of the foreign conduct at issue in this litigation if it were only relevant to claims or defenses that have been stricken by the September 26, 2006 Order, it is not proper to deny the discovery of the Foreign Conduct Discovery Materials because they are relevant to the export commerce claims.  See Oppenheimer Fund, 437 U.S. at 351-52.

FN10.  AMD's Complaint alleges exclusionary conduct on the part of Intel throughout the Complaint, including at paragraphs 2 and 129. Further, AMD's Complaint at paragraphs 63 and 67 references the "market-foreclosing" effects of Intel's alleged discount program and rebate schemes, respectively.  The categories of Foreign Conduct Discovery Materials essentially mirror the categories of alleged exclusionary conduct set forth in paragraph 2 of AMD's Complaint.

Monopolization

Pursuant to Section 2 of the Sherman Act, it is unlawful for a firm to "monopolize". See United States v. Microsoft Corp., 253 F.3d 34, 50 (D.C.Cir.2001); 15 U.S.C. § 2. "The offense of monopolization has two elements:  '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." '  Microsoft, 253 F.3d at 50 (citing United States v. Grinnell Corp., 384 U.S. 563, 570-71, 86 S.Ct. 1698, 16 L.Ed.2d 778); see also Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 595-96, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985);  United States v. Dentsply International, Inc., 399 F.3d 181, 186 (3d Cir.2005) (citation omitted). AMD acknowledges that to prove its claim under Section 2 of the Sherman Act.  "AMD must show (1) that Intel has market power in the relevant market, and (2) that Intel acquired or maintained its

Slip Copy
(Cite as: 2007 WL 137152, *8 (D.Del.))

monopoly through anticompetitive means, rather than by means of a superior product, business acumen, or historic accident." D.I. 236 at p. 12.

### Relevant Market

Identifying the relevant market is the "first step" in any antitrust action brought under Section 2 of the Sherman Act. Conwood Co., L.P. v. U.S. Tobacco Co., 290 F.3d 768, 782 (6th Cir.2002), cert. denied, 537 U.S. 1148, 123 S.Ct. 876, 154 L.Ed.2d 850 (2003). The geographic market is defined as the area within which parties compete for business. See Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 331, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961). The parties do not dispute that the relevant geographic market is a worldwide market. In fact, Intel admits by its answer to paragraph 24 of the Complaint, D.I. 54 at ¶ 24, that "The relevant geographic market for x86 microprocessors is worldwide. Intel and AMD compete globally...." It is unclear whether there is a real dispute as to the relevant product market. See id. For purposes of this report and recommendation, the Special Master assumes that that relevant product market is that of the x86 Microprocessor Market--microprocessors that run the Microsoft Windows and Linux families of operating systems. [FN11] See D.I. 1 at ¶ 1.

> FN11. Nowhere in its opposition to AMD's motion to compel does Intel challenge AMD's assertion that Intel concedes the relevant market "is a single, worldwide market for x86 microprocessors." See D .I. 236 at p. 2; D.I. 243 generally.

### Monopoly Power

*9 "Monopoly power is the power to control prices or exclude competition." Los Angeles Land v. Brunswick Corp., 6 F.3d 1422, 1425 (9th Cir.1993); see also Grinnell, 384 U.S. at 571. Whether an entity has monopoly or market power "may be proven directly by evidence of control of prices or the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market." Conwood Co., L.P., 290 F.3d at 783, fn2 (citing Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 97-98 (2d Cir.1998)); see also Dentsply, 399 F.3d at 187 (existence of monopoly power can be inferred from predominant share of market). [FN12] However, looking to current market share can be misleading and may not

by itself indicate monopoly power. Microsoft, 253 F.3d at 54 (citations omitted).

> FN12. "Courts have increasingly leaned toward using circumstantial evidence as a short cut to determine whether monopoly power exists." Conwood Co., L.P., 290 F.3d at 783, fn2 (citation omitted).

Here, Intel has agreed to provide plaintiffs with information relevant to showing Intel's market share throughout the x86 Microprocessor Market, including sales to foreign countries. Intel, however, is unwilling to provide plaintiffs with the additional discovery sought through the Foreign Conduct Discovery Materials. [FN13] Thus, Intel's position places the Plaintiffs at risk of being incapable of proving one of the necessary elements of their prima facie case--monopoly power--a burden that AMD acknowledges it must satisfy to prevail in the litigation.

> FN13. As an alternative to Intel producing the Foreign Conduct Discovery Materials, AMD proposed that Intel stipulate or admit to certain of the elements of proof regarding the claims. D.I. 236 at pp. 14 (monopoly power), 15 (anticompetitive means), and 17 (exclusionary conduct). Not surprisingly, Intel has not agreed to do so.

To prove monopoly power, AMD must show that Intel has the power to control prices or exclude competition. See Grinnell, 384 U.S. at 571; Dentsply, 399 F.3d at 186; Los Angeles Land, 6 F.3d at 1425. As Intel is unwilling to stipulate to having monopoly power, AMD is entitled to discover information relevant to Intel's ability to control prices and/or exclude competition. Accordingly, the Special Master concludes that the Foreign Conduct Discovery Materials are reasonably calculated to lead to the discovery of exclusionary conduct that would be indicative of monopoly power in the global marketplace.

### Anticompetitive Conduct

Aggressive, competitive conduct by a monopolist is highly beneficial to consumers. Courts should prize and encourage it under the antitrust laws. Aggressive, exclusionary conduct by a monopolist is deleterious to consumers. Courts should condemn it under the antitrust laws. There is only one problem.    Competitive and exclusionary

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *9 (D.Del.))

conduct look alike.
Frank H. Easterbrook, Symposium: Developments in Section Two of the Sherman Act on Identifying Exclusionary Conduct, 61 Notre Dame L.Rev. 972 (1986).

Having a monopoly does not by itself violate Section 2 of the Sherman Act. Microsoft, 253 F.3d at 58. A firm violates Section 2 of the Sherman Act "only when it acquires or maintains, or attempts to acquire or maintain, a monopoly by engaging in exclusionary conduct as 'distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." ' Microsoft, 253 F.3d at 58 (citing Grinnell, 384 U.S. at 570-71). "A monopolist willfully acquires or maintains monopoly power when it competes on some basis other than the merits." LePage's, Inc. v. 3M, 324 F.3d 141, 147 (3d Cir.2003) (en banc), cert. denied, 542 U.S. 953, 124 S.Ct. 2932, 159 L.Ed.2d 835 (2004).

*10 "An attempted monopolization [under § 2] occurs when a competitor, with a dangerous probability of success, engages in anti-competitive practices the specific design of which are, to build a monopoly or`exclude or destroy competition." Conwood Co., L.P., 290 F.3d at 782 (emphasis added) (citation omitted); see also Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 459, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993) (proof of dangerous probability of success of monopolizing and specific intent to monopolize required to establish liability for attempted monopolization under Section 2 of the Sherman Act).     In order for a "completed" monopolization claim to succeed, "the plaintiff must prove a general intent on the part of the monopolist to exclude; while by contrast, to prevail on a 'mere' attempt claim, the plaintiff must prove specific intent to 'destroy competition or build monopoly power." ' Conwood Co., L.P., 290 F.3d at 782 (citing Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 101 (2d Cir.1998)). "However, 'no monopolist monopolizes unconscious of what he is doing." ' Conwood Co., L.P., 290 F.3d at 782 (citing Aspen, 472 U.S. at 602). "Thus, '[i]mproper exclusion (exclusion not the result of superior efficiency) is always deliberately intended." Conwood Co., L.P., 290 F.3d at 782 (citing Aspen, 472 U.S. at 603).

"If a firm has been attempting to exclude rivals on

some basis other than efficiency, it is fair to characterize its behavior as predatory [or exclusionary.]" Conwood Co., L.P., 290 F.3d at 783 (citing Aspen, 472 U.S. at 605). However, just because an entity has monopoly or market power, does not bar it from taking advantage of its scale of economies because of its size. Conwood Co., L.P., 290 F.3d at 783 (citing Aspen, 472 U.S. at 597).

To be condemned as exclusionary, a monopolist's conduct must have an anticompetitive effect--it must harm the competitive process and thereby harm consumers. Microsoft, 253 F.3d at 58. Typically, harm to one or more competitors will not suffice. Microsoft, 253 F.3d at 58. However, if the there is only one other competitor, harm to such competitor may suffice. See, e.g., Aspen, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (defendant that controlled three-fourths of relevant ski-facility market held liable for monopolization when it engaged in exclusionary conducted directed at its only competitor); Power Replacements Corp. v. Air Preheater Company, Inc., 356 F.Supp. 872, 896-897 (E.D.Pa.1973) (defendant liable for monopolization where defendant had power to exclude competition and was successful in excluding competition of its only rival through discriminatory price discounts and disparagement of plaintiffs' products). "The [Sherman Act] directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." Microsoft, 253 F.3d at 58 (citing Spectrum Sports, 506 U.S. at 458).

*11 In this case, AMD alleges that Intel monopolized through exclusionary conduct. Accordingly, AMD must show that: (i) Intel engaged in exclusionary conduct, and (ii) any such exclusionary conduct was sufficiently material to the overall relevant market so as to violate U.S. antitrust laws. [FN14] As the undisputed geographic market is global, and approximately 68% of the total worldwide production of computers powered by x86 microprocessors are sold to non-U.S. customers, [FN15] evidence of foreign exclusionary conduct is essential for AMD to demonstrate that Intel's alleged exclusionary conduct was sufficiently material to the overall relevant market so as to violate U.S. antitrust laws. See, e.g., Microsoft, 253 F.3d at 68-71.

FN14. AMD acknowledges this burden of proof.

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *11 (D.Del.))

See D.I. 236 at p. 12; D.I. 274 26:22-27:5 ("[I]t is not every exclusion that establishes violation of Section 2, it is only when the exclusion aggregated throughout the available market to the participants and rivals in the market has some material outcome, some material preclusion that maintains the monopoly for the monopolist and excludes competition....")

FN15. See D.I. 1 at ¶ 28.

Accordingly, the Special Master concludes that the Foreign Conduct Discovery Materials are reasonably calculated to lead to the discovery of facts that would support a showing that any exclusionary conduct was sufficiently material to the overall relevant market so as to violate U.S. antitrust laws.

FTAIA Does Not Prohibit Discovery of Foreign
Conduct Relevant to Surviving
Claims

Having concluded that the Foreign Conduct Discovery Materials are discoverable on various grounds, including: (i) their relevance to exclusionary conduct that would support a foreclosure claim in connection with the sale of U.S.-made microprocessors abroad, (ii) their relevance to exclusionary conduct that would be indicative of monopoly power in the global marketplace, and (iii) their relevance to facts that would support a showing that any exclusionary conduct was sufficiently material to the overall global market so as to violate U.S. antitrust laws, the Special Master will now address whether the FTAIA somehow prohibits the discovery of otherwise discoverable information.

Intel's argument that the FTAIA prohibits the discovery of the Foreign Conduct Discovery Materials would prevail if the foreign conduct were only relevant to the claims stricken by the September 26, 2006 Opinion. See Oppenheimer Fund, Inc., 437 U.S. at 351-52 ("it is proper to deny discovery of [information] that is relevant only to claims or defenses that have been stricken ..., unless the information sought is otherwise relevant to issues in the case") (emphasis added). However, as discussed above, the foreign conduct at issue is relevant to both the domestic commerce claims and the export commerce claims, which claims remain at

issue in the litigation. Accordingly, under Oppenheimer, discovery of the Foreign Conduct Discovery Materials should not be denied. Id.

While the FTAIA does limit certain foreign conduct from being actionable under the Sherman Act, the FTAIA does not prohibit the discovery of information that is otherwise discoverable. Indeed, nothing in the FTAIA suggests it was designed to prohibit the discovery of information that is otherwise discoverable and Intel is unable to cite to any case in support of such proposition. In fact, the language in the legislative history surrounding the enactment of the FTAIA that is related to discovery states as follows:
*12 1. Effect of Legislation and Current Law
A very important question is the effect of the legislation on current antitrust law. It is the intent of the sponsors of the legislation and the Committee to address only the subject matter jurisdiction of United States antitrust law in this legislation.... [T]he bill is not intended to restrict the application of American laws to extraterritorial conduct where the requisite effects exist or to the extraterritorial pursuit of evidence in appropriate cases.
H.R.Rep. No. 97-686, at 13 (1982), reprinted in 1982 U.S.C.C.A.N. 2487, 2498 (emphasis added). [FN16]

FN16. While the Special Master acknowledges that the use of legislative history is reserved for instances where the language of the statute is unclear, the Special Master views the legislative history as instructive, especially as the FTAIA itself is silent with respect to discovery. The Special Master notes that the legislative history cited herein is consistent with the statutory construction rule of in pari materia--i.e., a new statute should be read as part of the existing legislature and should expressly indicate any intended divergence.

Intel offers no answer for what cases would be "appropriate" if these pending cases are not. Rather, Intel focuses on the word "evidence," drawing a distinction between that word and the word "discovery." Intel then argues that substantive law, rather than discovery rules, would not permit "evidence" to be considered unless it was relevant to claims having "the direct requisite effect on U.S. commerce." D.I. 274 at 46:13-51:17. The Special Master concludes that this argument is non-availing,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy
(Cite as: 2007 WL 137152, *12 (D.Del.))

given that AMD has claimed domestic injury for its export commerce claims. D.I. 1 at ¶¶ 2, 36, 63, 67 and 129.

Additionally, Intel offers no authority in support of its theory that--under similar circumstances--the FTAIA precludes discovery of the foreign conduct related to both AMD's domestic commerce claims and its export commerce claims. In contrast, AMD offers authority in the form of several court decisions authored after the enactment of the FTAIA that clearly permitted such discovery. D.I. 236 at p. 4. In reviewing these authorities, the Special Master notes two authorities, including one from this Court, that are particularly instructive.

In Dentsply, this Court addressed the relevancy of foreign market data to alleged violations of the Sherman Act, with respect to:

> facts relevant to the United States' claim that Dentsply has violated antitrust laws by imposing a condition on its United States dealers that has foreclosed competitors from entering the artificial tooth market in the United States, and whether and to what extent competitive artificial teeth entered the United States market and what effect, if any, Dentsply's United States distribution policy has had on the ability of competitive artificial teeth to enter the United States market.

Dentsply, 2000 WL 654286 at *5. The Court concluded that "The fact that the United States is the relevant market in this case does not necessarily limit discovery to the United States." Id. The Court permitted each category of discovery sought, based upon its findings that they were probative of such issues as "intent" and "effect on competition." Id. at *5-6.

Similarly, the United States District Court for the Eastern District of Pennsylvania permitted the discovery of foreign documents that were produced to a foreign investigative body upon a finding they were relevant to antitrust claims affecting American commerce:

> *13 Regardless of whether plaintiffs have alleged a global conspiracy, materials produced to international government authorities may cover transactions involving the sale or marketing of plastic additives in the United States. They may also cover transactions and decision-making outside the United States that influence the sale or marketing of plastic additives in the United States.

Accordingly, these documents may lead to evidence that illuminates defendants' motive and opportunity for the alleged conspiracy within the United States, the breadth of the conspiracy, and the manner by which the defendants fraudulently concealed the conspiracy from plaintiffs.

Plastic Additives, 2004 WL 2743591 at *14.

Based upon the plain language of the FTAIA, and consistent with the legislative history of the FTAIA and the rationale underlying the decisions of courts that have permitted discovery of foreign conduct in antitrust cases, the Special Master concludes that the FTAIA does not preclude AMD from obtaining the discovery sought by Plaintiffs' motions.

CONCLUSION

In conclusion, and for the reasons set forth above, the Special Master recommends that Plaintiffs' motions to compel Intel to produce the Foreign Conduct Discovery Materials be GRANTED. In this regard, the Special Master does not opine on the ultimate admissibility of any Foreign Conduct Discoverability Material for purposes of trial.

The Special Master's Report and Recommendation will become a final order of the Court unless objection is timely taken by December 27, 2006, in accordance with the Court's Order dated December 8, 2006.

2007 WL 137152 (D.Del.), 2007-1 Trade Cases P 75,557

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo