**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **INEOS FLUOR AMERICAS LLC,** | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) C.A. No. 06-189 (SLR) |
|  | ) |
| **HONEYWELL INTERNATIONAL INC.,** | ) |
| Defendant. | ) **PUBLIC VERSION** |
|  | ) |

**HONEYWELL'S OPPOSITION TO**
**INEOS'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Martin P. Tully (#465)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE19899
(302) 658-9200
*Attorneys for Defendant Honeywell*
*International Inc.*

OF COUNSEL:

KIRKLAND & ELLIS LLP
Yosef J. Riemer
Andrew R. Dunlap
Michael D. Reisman
153 East 53rd Street
New York, NY 10022
(212) 446-4800

-and-

Mark L. Kovner
Michael S. Becker
Julie Brennan Jacobs
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005-5793
(202) 879-5000

May 29, 2007

## Table Of Contents

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT .......................................................................................................10

I.    Ineos's Mischaracterizes Honeywell's Privilege And Redaction Logs ............10

      A.    Category 1:  Honeywell's Logs Clearly Explain The Basis For Its
            Privilege Claims Over These Documents. ............................................10

      B.    Category 2:  Honeywell's Logs Make Clear That The Vast Majority Of
            These Documents Are Attachments To Privileged Communications And
            Explain The Basis Of Honeywell's Privilege Claims............................12

      C.    Category 3:  These Documents Specifically Include Requests For Legal
            Advice. .................................................................................................15

      D.    Category 4:            **REDACTED**                                    ...16

      E.    Category 5:  These Documents Reflect Requests For Legal Advice And
            Do Not Relate Solely To Business Planning Or Strategy......................17

      F.    Category 6:  These Documents Are Properly Subject To The
            Work-Product Privilege Because They Were Prepared In Anticipation Of
            Litigation...............................................................................................19

II.   Honeywell Has Demonstrated The Bases For Withholding Or Redacting The
      Documents On Its Logs .....................................................................................22

III.  Ineos Has No Basis For Its Radical Request That Honeywell Produce All Of Its
      Privileged Documents........................................................................................24

CONCLUSION.....................................................................................................26

## Table Of Authorities

### Cases

*Andritz Sprout-Bayer, Inc. v. Beazer East, Inc.,*
174 F.R.D. 609 (M.D. Pa. 1997)............................................................................... 15, 22

*Bogosian v. Gulf Oil Corp.,*
738 F.2d 587 (3d Cir. 1984)...................................................................................... 21

*Hercules, Inc. v. Exxon Corp.,*
434 F. Supp. 136 (D. Del. 1977).............................................................................. 22

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
213 F.3d at 138 (3d Cir. 2000).............................................................................. 20, 21

*In re County of Erie,*
473 F.3d 413 (2d Cir. 2007)..................................................................................... 23

*In re Pfizer Inc. Sec. Litig.,*
1993 WL 561125 (S.D.N.Y. 1993)........................................................................... 22

*In re Sealed Case,*
146 F.3d 881 (D.C. Cir. 1998).................................................................................. 23

*In re Teleglobe Communications Corp. v. BCE, Inc.,*
2006 WL 2567880 (D. Del. Jun. 2, 2006) ............................................................... 25

*Kopacz v. Delaware River and Bay Authority,*
2005 WL 2086747 (D. Del. Aug. 29, 2005) ............................................................ 18

*LML Patent Corp. v. Telecheck Services, Inc.,*
2006 WL 839321 (D. Del. Mar. 28, 2006) .............................................................. 25

*Muller v. Walt Disney Prods.,*
871 F. Supp. 678 (S.D.N.Y. 1994) .......................................................................... 23

*OneBeacon Insurance Co. v. Forman Int'l Ltd.,*
2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ........................................................ 15

*Pettingill v. Caldwell,*
2006 WL 2439842 (D. Del. Aug. 21, 2006) ............................................................ 16

*Pfizer Inc. v. Ranbaxy Labs Ltd.,*
2004 WL 2323135, (D. Del. Oct. 7, 2004) ............................................... 12, 16, 21, 22

*Phillips Elecs. N. Am. Corp. v. Universal Elecs., Inc.,*
892 F. Supp. 108 (D. Del. 1995)............................................................................. 23

*SmithKline Beecham Corp. v. Atoptex Corp.,*
    232 F.R.D. 467 (E.D. Pa. 2005) ............................................................ 11, 14, 15

*Synalloy Corp. v. Gray,*
    142 F.R.D. 266 (D. Del. 1992) .......................................................................... 19

*Tulip Computers International B.V. v. Dell Computer Corp.,*
    210 F.R.D. 100 (D. Del 2002) .......................................................................... 14

*U.S. v. Rockwell,*
    897 F.2d 1255 (3d Cir. 1990) ........................................................................... 19

*U.S. v. Schwimmer,*
    892 F.2d 237 (2d Cir. 1989) ....................................................................... 19, 20

*Union Pacific Resources Group, Inc. v. Pennzoil Co.,*
    1997 LEXIS 24216 (D. Del. Sept. 2, 1997) ..................................................... 12

*Wilderness Society v. Dep't of the Interior,*
    355 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................... 14

**Rules**

Fed. R. Civ. P. 26(b)(3) ............................................................................................. 21

## INTRODUCTION

Ineos has no basis to compel the production of the approximately 3,000 documents it challenges among the approximately 11,000 documents appearing on Honeywell's privilege and redaction logs.

**First**, the terse statements in Ineos's motion and discovery letters, which divide the challenged documents into six "categories," mischaracterize broad swaths of Honeywell's logs, in apparent disregard of the logs themselves and the explanations provided by Honeywell's counsel:

> Category 1:  Ineos claims that these entries fail to identify an attorney as sender or recipient -- even many most of the challenged entries do exactly that, and the others plainly state that the documents reflect legal advice;

> Category 2:  Ineos claims that these entries fail to identify any authors or recipients, even though it is clear that the vast majority of them are attachments to preceding entries where the full basis for privilege is described;

> Category 3:  Ineos claims that these entries list Honeywell attorneys in the "cc" line, ignoring that these communications involved requests for legal advice or legal advice that had already been provided;

> Category 4:  **REDACTED** completely disregarding the evidence that Honeywell has an independent basis for withholding these documents;

> Category 5:  Ineos claims that these entries relate solely to business planning, even though the entries show that they relate to legal advice; and

> Category 6:  Ineos claims that these entries do not provide a basis for work product protection, even though the entries do provide this information and even though Ineos does not contest that they are also subject to the attorney-client privilege.

Remarkably, Ineos makes these challenges even though it engaged in many of the same practices for which it now criticizes Honeywell in preparing its own privilege log. For example, Ineos held back documents that "reflect" or "discuss" legal advice, and prepared some log entries that do not identify specific attorneys. (*See* Section I, below.)

*Second*, the challenged Honeywell documents are properly privileged, as they are attorney-client communications, draft contracts submitted for attorney review, or draft pleadings. If the Court wishes, Honeywell would be glad to submit the documents (or any group of documents requested by the Court) for *in camera* review. (*See* Section II, below.)

*Finally*, as if Ineos's blunderbuss attack on 3,000 documents on Honeywell's privilege log was not enough, Ineos goes even farther in the last pages of its brief, demanding in even more conclusory fashion that Honeywell produce another 8,000 or so documents on which Honeywell also claimed privilege. Indeed, Ineos never presented any challenge and never engaged in any meet and confer with respect to these additional 8,000 documents. Honeywell's review has been careful and thorough, as shown by the logs themselves and Honeywell's detailed discussion of the withheld documents in its discovery letters and this Opposition. Unfortunately, the same care is not apparent in Ineos's conclusory motion, which provides no factual or legal basis for its astounding request that Honeywell produce all of its privileged documents. (*See* Section III, below.)

## BACKGROUND

Ineos's breach of contract and antitrust claims against Honeywell in this litigation concern hydrofluoric acid ("HF"), a chemical that Honeywell sells to Ineos for use in making refrigerants.

## REDACTED

# REDACTED

In pursuit of these claims, Ineos served far-ranging document requests that called for, *inter alia*, all information regarding Honeywell's production, marketing, and use of HF.

## Honeywell's Extensive Document Production

During the course of discovery, Honeywell's counsel collected and reviewed over 300,000 potentially responsive documents. Following this extensive review, Honeywell produced approximately 54,000 documents -- nearly 900,000 pages. (Ineos, by contrast, produced less than 7,000 documents.) The parties agreed to exchange privilege logs on April 6, 2007. Honeywell listed 9,751 documents on its privilege log and 1,050 documents on its redaction log.

The number of Honeywell's privileged documents here is unsurprising. Unlike Ineos, which claims to have no in-house counsel (Hearing Tr. 4, Jan. 18, 2007), Honeywell has a large and active legal department, and its businesspeople regularly consult with its attorneys. (*See* Aff. Of Charles Graf In Supp. Of Honeywell's Opp'n To Ineos's Mot. To Compel Produc. Of Docs. ("Graf Aff.") ¶ 3.)[1] Of the 23 Honeywell document custodians in this case, six are or were lawyers for Honeywell -- Beth Stairs (whom Ineos deposed), Katherine Ma, Steve Plotkin, Jeffrey Neuman, Chuck Graf, and Linda Clark. (Graf Aff. ¶ 4.) At least a third of the documents listed on Honeywell's privilege or redaction logs came from these custodians.

---

[1] Even though Ineos has no in-house counsel, it still managed to claim privilege over four percent of its responsive documents (303 of 7,160). (*See* Decl. Of Jason Cincilla In Supp. Of Honeywell's Opp'n To Ineos's Mot. To Compel Produc. Of Docs. ("Decl.") Ex. A.)

Further, many of Ineos's document requests asked for information that went to core legal advice.


# REDACTED


appear on a privilege log multiple times. For example, if a businessperson sent a request for legal advice to an attorney and copied three colleagues, each of whom retained the document, that single email could show up on the log as many as five times -- once from each individual's email files. (*See, e.g.*, Pl. Ineos Fluor America LLC's Mot. To Compel Produce. Of Docs. From Honeywell International Inc. ("Mot") Ex. A Privilege Log Entries 417, 763, 956, 3268, and 7606 (each describing a February 22, 2006 email from Blake Wiseman to others concerning a sales agreement with Chemtronics).)

**Honeywell Explains The Basis For Documents On Its Privilege Log**

On April 25, 2007 -- two days before the discovery deadline -- Ineos sent Honeywell a letter that tersely demanded production of 2,999 of the 9,751 documents on Honeywell's privilege log. (Mot. Ex. C Ltr. 1.) The letter divided these documents into six "categories," but provided no analysis of Ineos's claim that documents in any of the categories

were not properly privileged.[2] (*Id.*)  After a thorough re-review, during which its attorneys went over all of the thousands of documents identified in Ineos's letter, Honeywell sent a detailed response on May 9, 2007. (Mot. Ex. D Ltr. 1.)[3]

Category 1:  Ineos challenged 404 documents on the ground that no Honeywell attorneys were listed as having sent or received them.   (Mot. Ex. C Ltr. 1 Attach. at 1.) Honeywell explained that 251 of these documents are attorney-client communications regarding draft contracts; 54 contain or reflect other attorney-client communications; and one is a draft pleading. (Mot. Ex. D Ltr. 1 at 2-3.) Honeywell agreed to produce the other 104 documents, 93 without redactions and 11 in redacted form. (*Id.* at 3.)

Category 2:  Ineos challenged 2039 documents on the ground that no individuals were listed in the documents' log entries. (Mot. Ex. C Ltr. 1 Attach. at 1-3.)  Honeywell pointed out that most of these documents were actually attachments to other documents, for which Honeywell had provided full identifying information (including sender and recipient).   (Mot. Ex. D Ltr. 1 at 4.)   Honeywell further explained that 1,468 of these documents are draft contracts; ten contain or reflect privileged communications regarding draft contracts; 111 are documents containing or reflecting attorney-client communications or work product; seven are draft pleadings; and one contains communications and work product related to this litigation.

---

2   Indeed, Ineos cited only a single case in its April 25, 2007 letter to support its accusation that "Honeywell has sought to simply withhold from production every document on which an attorney was copied." (Mot. Ex. C Ltr. 1 at 1.)  In fact, Honeywell has produced over *1,600* documents on which its attorneys were copied.  Ineos should be aware of this, at it has marked several of these documents as deposition exhibits. (Decl. Exs. C, D, and E.)

3   In counting the massive numbers of documents listed in Ineos's letters, it appears that the parties reached slightly different totals in several cases.  For Category 1 of Ineos's letter regarding Honeywell's privilege log, Ineos counted 404 documents and Honeywell counted 410; for Category 2, Ineos counted 2036 documents and Honeywell counted 2027; for Category 3, Ineos counted 440 documents and Honeywell counted 441; and for Category 5, Ineos counted documents 23 and Honeywell counted 25.  In Category 3 of Ineos's letter regarding Honeywell's redaction log, Ineos counted 74 documents and Honeywell counted 72. This Opposition refers to Honeywell's totals.

(*Id.* at 4-7.)  Honeywell agreed to produce the other 429 documents, 411 documents without redaction and 18 in redacted form.  (*Id.* at 6-7.)

Category 3:  Ineos challenged 440 documents on the ground that they are communications between non-attorneys with Honeywell lawyers listed in the "cc" line.  (Mot. Ex. C Ltr. 1 Attach. at 4.)  Honeywell pointed out that whether a lawyer appears in the "to" or "cc" line does not determine whether the document is privileged.  (Mot. Ex. D Ltr. 1 at 7.)  Honeywell further explained that 337 of these documents are communications regarding draft contracts; 60 are documents relating to contracts or litigation with Ineos; and one is a document reflecting legal advice regarding a pending litigation.  (*Id.* at 7-8.)  Honeywell agreed to produce the other 42 documents, 33 documents without redaction and nine in redacted form.  (*Id.*)

Category 4:

# REDACTED

To the contrary, Honeywell asserted privilege over the documents at issue in this category for independent reasons.  (Mot. Ex. D Ltr. 1 at 9 ("Honeywell has an independent basis for assertion of privilege for each of the documents in this category that it will withhold."))  Thus, two of the challenged documents are documents relating to contracts or litigation with Ineos; and five are communications reflecting privileged communications regarding draft contracts.  (*Id.*)  Honeywell agreed to produce the other six documents, five without redaction and one in redacted form.  (*Id.*)

Category 5:  Ineos challenged 23 documents circulated to Honeywell attorneys that it claimed relate "primarily to business topics."  (Mot. Ex. C Ltr. 1 Attach. at 4.)  Honeywell disputed this characterization.  (Mot. Ex. D Ltr. 1 at 9.)  Honeywell explained that of these

challenged documents, 16 are documents relating to contracts or litigation with Ineos; and one concerns legal advice relating to executive approval of contracts. (*Id.* at 9-10.) Honeywell agreed to produce the eight remaining documents. (*Id.* at 10.)

Category 6: Ineos challenged 71 documents that it claimed were improperly withheld as work product. (Mot. Ex. C Ltr. 1 Attach. at 6.) Honeywell explained that 53 of these documents were prepared in anticipation of actual or potential litigation with Ineos. (Mot. Ex. D Ltr. 1 at 10.) Of the remaining documents, two are communications regarding a draft contract with Ineos; one is a draft pleading; one was an internal analysis concerning litigation with Ineos; and 14 are draft contracts. (*Id.*) Honeywell noted that these documents were also protected by the attorney-client privilege. Honeywell declined to produce any of the documents in this category.

**Honeywell Explains The Basis For Documents On Its Redaction Log**

On April 27, 2007 -- the date of the discovery deadline -- Ineos sent Honeywell a second letter, this one demanding production of an additional 619 documents among the 1,050 documents on Honeywell's redaction log. Ineos divided these documents into four "categories," which overlapped with four of the categories from its April 25, 2007 letter. (Mot. Ex. C Ltr. 2.) Ineos provided no analysis of its demands, and cited no case law to support them. After a thorough re-review, Honeywell responded on May 9, 2007. (Mot. Ex. D Ltr. 2.)

Category 1: Ineos challenged 423 documents on the ground that the log entries for these documents listed no Honeywell attorneys as having sent or received them. (Mot. Ex. C Ltr. 1 Attach. at 1.) Honeywell explained that 364 contain legal advice concerning contracts or litigation with Ineos; 36 contain privileged communications regarding draft contracts and litigation relating to Ineos; nine reflect legal advice and requests for legal advice regarding draft

contracts; three are privileged in their entirety; and two contain information reflecting legal advice and requests for legal advice. (Mot. Ex. D Ltr. 2 at 2-3.) Honeywell agreed to produce in full the remaining nine documents. (*Id.* at 3.)

Category 2: Ineos challenged 106 documents on the ground that their redaction log entries listed no individuals. (Mot. Ex. C Ltr. 1 Attach. at 1.) Honeywell pointed out that most of these documents are actually attachments to other documents listed on the log, for which Honeywell had provided full identifying information (including sender and recipient). (Mot. Ex. D Ltr. 2 at 4.) Honeywell further explained that four contain information concerning draft contracts; 38 contain other requests for legal advice; 45 concern contracts or litigation with Ineos; five contain legal advice and requests for legal advice regarding draft contracts;

## REDACTED

and two are privileged in their entirety. (*Id.* at 4-5.) Honeywell agreed to produce in full the remaining seven documents. (*Id.* at 5.)

Category 3: Ineos challenged 74 documents on the ground that they are correspondence between non-attorneys with Honeywell lawyers listed in the "cc" line. (Mot. Ex. C Ltr. 1 Attach. at 1.) Honeywell pointed out that whether a lawyer appears in the "to" or "cc" line does not determine whether the document is privileged. (Mot. Ex. D Ltr. 2 at 5.) Honeywell further explained that 55 are communications regarding draft contracts; and 17 concern contracts or litigation with Ineos. (*Id.* at 5-6.) Honeywell declined to produce any of the documents in this category.

Category 4: Ineos challenged 16 documents on the basis that they were improperly withheld as work product. (Mot. Ex. C Ltr. 1 Attach. at 1.) Honeywell agreed to produce in full nine documents. (*Id.* at 7.) Honeywell explained that six of the remaining

documents were prepared in anticipation of actual or potential litigation with Ineos, and that and one contained information regarding a draft contract. (*Id.*)  Honeywell noted that all of these remaining documents were also protected by the attorney-client privilege.  (Mot. Ex. D Ltr. 2 at 6.)

### Ineos Files Its Motion To Compel

On May 11, 2007, Ineos filed a motion to compel, claiming that Honeywell "did little to address INEOS's substantive challenges." (Mot. 4.)  In Part I of its motion, Ineos moved on every single item on Honeywell's privilege and redaction logs that Ineos had listed in its April 25 and 27, 2007 letters (apparently including items that Honeywell had agreed to produce).  Then, in Part II, Ineos asked this Court to compel production of all of another 8,000 or so documents.  These latter documents had never been raised during the parties' meet and confer.  Honeywell now files its Opposition and asks this Court to reject Ineos's motion.

**ARGUMENT**

I.  **INEOS'S MISCHARACTERIZES HONEYWELL'S PRIVILEGE AND REDACTION LOGS**

      A.  <u>**Category 1**</u>:  **Honeywell's Logs Clearly Explain The Basis For Its Privilege Claims Over These Documents.**

             Ineos claims that Honeywell failed to identify any attorneys concerning these 714 documents on both logs.[4]  This is false.  Of the documents that Ineos challenges in this category, 40 are attachments to documents listed above them on Honeywell's logs, where the full description of the basis for privilege may be found.  The logs make this clear.

**REDACTED**

(Mot. Ex. A Privilege Log Entries 34-35 (asterisk indicates attorney).)  For another two of the entries, the relevant attorney is identified directly in the document's description.  (Mot. Ex. A Entries 167 and 648.)  It is not accurate, therefore, for Ineos to claim that Honeywell's logs provide no basis for it to evaluate the privilege claims for these attachments.

             The remaining documents in this category do not list attorneys as senders or recipients because they reflect legal advice received by non-lawyers within Honeywell.

---

[4]  Ineos claims that 827 documents in Category 1 are at issue.  (Mot. ¶ 8.)  In fact, Honeywell has agreed to produce 113 of these documents, leaving only 714 at issue.

**REDACTED**

(Mot. Ex. A Privilege Log Entry 180 (emphasis added) (asterisk indicates attorney).)

As authority cited by Ineos shows, communications retain their privileged status when forwarded within a corporation:

> A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. ***In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys.*** Moreover, documents subject to the privilege may be transmitted between non-attorneys so that the corporation may be properly informed of legal advice and act appropriately.

*SmithKline Beecham Corp. v. Atoptex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (emphasis added) (citations and quotations omitted).[5]

**REDACTED**

_____

Ineos cites no authority indicating that it is entitled to production of all 714 of the Category 1 documents. This is not a case like *SmithKline Beecham Corp.*, where defendant alleged that several entries on plaintiff's privilege log lacked "any indicia of substantive attorney involvement." *Id.* at 477. To the contrary, as discussed, the vast majority of the documents in Category 1 contain that information either directly or in the entries for attaching documents. The other cases that Ineos cites likewise provide no support for its argument. In *Pfizer Inc. v. Ranbaxy Labs Ltd.*, No. 03-209, 2004 WL 2323135 (D. Del. Oct. 7, 2004), the Court ordered production of documents on plaintiff's log that either lacked dates or had dates that cast doubt on plaintiff's assertion of work product privilege -- it did not discuss attorney names. *Pfizer*, 2004 WL 2323135, at *3. Similarly, there was no discussion of attorney names in *Union Pacific Resources Group, Inc. v. Pennzoil Co.*, 1997 LEXIS 24216 (D. Del. Sept. 2, 1997). Rather, the Court in that case ordered production of various documents after concluding, *inter alia*, that the documents were not shielded by the parent-subsidiary rule and that disclosure of some documents to a financial advisor waived any privilege -- claims that are not at issue here. *Id.* at *6-29.

**B.**     **Category 2:** **Honeywell's Logs Make Clear That The Vast Majority Of These Documents Are Attachments To Privileged Communications And Explain The Basis Of Honeywell's Privilege Claims**

In this, the largest of its categories, Ineos claims that 1709 documents should be produced because Honeywell "has not identified a single author, addressee, or recipient for these

---

**REDACTED**

documents." (Mot. ¶ 9.)[7]  Remarkably, Ineos makes this charge even after Honeywell explained, in writing, that

> [m]any of these entries consist of attachments to privileged attorney-client communications and immediately follow entries for which Honeywell has provided information for the transmitting e-mail communication.

(Mot. Ex. D. Ltr. 1 at 4. )  Honeywell's logs make clear that the overwhelming majority of the documents at issue in this category are attachments to other documents with complete descriptions.

**REDACTED**

(Mot. Ex. A Privilege Log Entries 1-2 (emphasis added) (asterisk indicates attorney).)

---

[7]  Ineos claims that 2,145 documents in Category 2 are at issue.  (Mot. ¶ 9.)  In fact, Honeywell has agreed to produce 436 of these documents, leaving only 1709 at issue.

The next document that Ineos challenges is Document No. 9.

# REDACTED

(Mot. Ex. A Privilege Log Entries 8-9 (emphasis added) (asterisk indicates attorney).)  Given that the information for all such attachments is clear from the privilege log, and that Honeywell noted the structure of the log to Ineos in correspondence, it is difficult to understand why Ineos claims that these documents lack identifying information.

Even if Honeywell's logs were somehow inadequate, none of the cases cited by Ineos support its demand that all of the Category 2 documents should be produced.  In *Tulip Computers International B.V. v. Dell Computer Corp.*, 210 F.R.D. 100 (D. Del 2002), Magistrate Judge Thynge *rejected* the same relief that Ineos requests here -- "the draconian approach" of "wholesale denial of all privilege and production of all listed documents" -- and instead asked the plaintiff to submit a handful of documents for *in camera* review.  *Tulip*, 210 F.R.D. at 106-07.   Similarly, in *Wilderness Society v. Dep't of the Interior*, 355 F. Supp. 2d 1 (D.D.C. 2004), the court gave defendants the option of producing an amended index clarifying the basis for privilege of various challenged documents. *Wilderness Society*, 210 F.R.D at 17.[8]

---

[8]  The other cases cited by Ineos in its discussion of Category 2 likewise do not support its attempt to compel production of all these documents. In *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D 467 (E.D. Pa. 2005), the court rejected defendant's attempt to compel production of 125 specific

**C.    Category 3:    These Documents Specifically Include Requests For Legal Advice.**

Ineos argues that these 472 documents should be produced because the document was "copied to a Honeywell attorney in addition to being sent to non-attorney personnel." (Mot. ¶ 12.)[9]  This argument is apparently based on the fact that attorney names appear in the "cc" lines of these emails, instead of the "from" or "to" lines.  But, as the authorities that Ineos cites on this point make clear, "[t]he content of the communication determines whether the privilege applies."  *Andritz Sprout-Bayer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997).  Honeywell's logs show that it based its privilege claims on the content of the documents in this category, not the placement of attorneys' names in the documents' descriptions.

**REDACTED**

---

documents, and ordered production of only four documents where the log provided "insufficient additional information to substantiate Plaintiff's claims."  In *OneBeacon Insurance Co. v. Forman Int'l Ltd.*, No. 04-2271, 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006), the court ordered production of an unidentified number of documents because plaintiffs had failed to comply with a local rule requiring more specific descriptions of the withheld material.  *OneBeacon*, 2006 WL 3771010, at *7.  There is no such rule at issue here.

[9]    Ineos claims that 514 documents in Category 3 are at issue.  (Mot. ¶ 12.)  In fact, Honeywell has agreed to produce 42 of these documents, leaving only 472 at issue.

**REDACTED**

(Mot. Ex. A Privilege Log Entries 3, 31, 175-77 (emphasis added) (asterisk indicates attorney).)

This is far different from the facts of the cases cited by Ineos. *Pettingill v. Caldwell*, No. 05-224, 2006 WL 2439842, at *1 (D. Del. Aug. 21, 2006) (ordering production of information that "pertains to such general factual matters ... and does not include the mental impressions, conclusions, opinions or legal theories of attorneys"); *Pfizer*, 2004 WL 2323135, at *3 (ordering production of documents that contained "purely factual information" and "purely scientific information" relating to patents); *Andritz Sprout-Bayer, Inc.*, 174 F.R.D. at 636 (ordering production of documents "if counsel was copied in as a matter of course" but not if the "purpose of the communication was to relay information for the purpose of seeking legal advice"). Here, the documents at issue are not purely factual, but rather reflect legal advice -- as plainly stated in their log descriptions.

**D.    Category 4:**

**REDACTED**

**REDACTED**

not the basis for the claim of attorney-client privilege over the documents withheld in this category.   (Mot. Ex. D. Ltr. 1 at 9.)[11]

**REDACTED**

E.     <u>Category 5</u>:  **These Documents Reflect Requests For Legal Advice And Do Not Relate Solely To Business Planning Or Strategy**

Ineos has no basis for its claim that Honeywell's privilege log contains 15 documents that "were related to business planning and strategy, rather than legal advice or work product." (Mot. ¶ 15.)[12]  In fact, the log entries for these documents clearly state that they contain or reflect legal advice or requests for legal advice.

**REDACTED**

---

10  Ineos claims that 13 documents in Category 4 are at issue.  (Mot. ¶ 14.)  In fact, Honeywell has agreed to produce six of these documents, leaving only seven at issue.

11  As Honeywell explained in its May 9, 2007 letter, two of these documents contain and reflect attorney-client communications relating to Ineos and the other five documents contain and reflect attorney-client communications regarding draft contracts.  (Mot. Ex. D Ltr. 1 at 9.)

12  Ineos claims that 23 documents in Category 5 are at issue.  (Mot. ¶ 15.)  In fact, Honeywell has agreed to produce eight of these documents, leaving only 15 at issue.

**REDACTED**

(Mot. Ex. A Privilege Log Entries 1658-59, 1662 (emphasis added) (asterisk indicates attorney).)
The only thing these documents appear to actually have in common is that they relate to Honeywell's legal strategy regarding Ineos,[13] much as several entries on Ineos's log relate to its legal strategy regarding Honeywell.  (Decl. Ex. A Entries 20, 129, 136, 142, and 147.)

None of the cases cited by Ineos support its argument that all the documents in this category should be produced.  In *Kopacz v. Delaware River and Bay Authority*, Nos. 04-911 and 04-1281, 2005 WL 2086747 (D. Del. Aug. 29, 2005), Judge Sleet of this Court reviewed a small number of defendants' documents *in camera* and ordered some of them produced. *Id.* at *3.  In doing so, the court discussed each document separately, determining whether each was privileged based on its specific content.  *Id.* at *2-3.  This case-by-case analysis in no way supports a wholesale production of all the documents in Ineos's Category 6.  The other two cases

---

13

**REDACTED**

that *Ineos* cites have nothing to do with its argument.  In *U.S. v. Rockwell*, 897 F.2d 1255 (3d Cir. 1990), the Third Circuit simply directed a district court to review documents for which work-production protection had been claimed, to determine whether the defendant had prepared them with the intent of preparing for litigation. *Id.* at 1266.  And in *Synalloy Corp. v. Gray*, 142 F.R.D. 266 (D. Del. 1992), this Court concluded that defendants had waived privilege over documents that showed they did not rely on plaintiff's statements when defendants countersued plaintiff for fraud.  None of these cases called for the wholesale production of documents requested by Ineos.

**F.    Category 6:  These Documents Are Properly Subject To The Work-Product Privilege Because They Were Prepared In Anticipation Of Litigation.**

Ineos argues that the 71 documents in this category should be produced either because their dates raise questions of whether the documents were produced in anticipation of litigation or because **REDACTED** (Mot. ¶ 17.)  Ineos did not bother, in its letter or motion, to differentiate these documents into their sub-categories.

Importantly, Ineos does not contest that all of the documents in Category 6 are also protected by the attorney-client privilege.  While maintaining its attorney-client privilege claims over all 71 of these Category 6 documents, Honeywell is withdrawing its work-product claims for 18 of them, leaving 53 documents at issue on the question of work product.[14]

Of these 53 documents, there appears to be only one -- Document No. 9739 on Honeywell's privilege log --

**REDACTED**

*U.S.  v.*

---

14    Honeywell withdraws its work-product claims for Documents No. 9486, 9656, 9375-9379, 9648-9651, 9653-55, and 9658-59 from its privilege log, and Documents No. 420 and 716 from its redaction log.

*Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) ("Information provided to an accountant by a client at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation.")

## REDACTED

(*See* Decl. Ex. F.)

Of the remaining 52 documents in this category, the entries for four plainly state the dates on which they were created, all within 2005.  (Mot. Ex. A Privilege Log Entries 1221, 1328, 1330, and 9680.)

## REDACTED

As the cases cited by Ineos show, it is well established that work-product protection extends to documents created in anticipation of potential litigation, such as those created in the months before Honeywell's price increase.  *See Holme s v. Pension Plan of*

*Bethlehem Steel Corp.*, 213 F.3d at 138 (3d Cir. 2000) (work product immunity extends to materials prepared in the course of preparation for possible litigation); *Pfizer*, 2004 WL 2323135, at *2 (attorney work product includes documents prepared by counsel or at counsel's direction in anticipation of litigation).

Moreover, documents such as those created by or at the direction of counsel in anticipation of Honeywell's price increase, with "with an eye towards litigation," *see Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 592 (3d Cir. 1984), are prime examples of the "opinion work product" that the work-product doctrine is designed to protect from disclosure. *See id.* at 593; *see also* Fed. R. Civ. P. 26(b)(3) (stating that the court shall protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories" of counsel).[15]

Of the 44 documents that lack creation dates on the face of the document, six are attachments to emails that contain full descriptive information. The entries for the remaining 38 documents in this category lack specific dates, but the context and content of the documents indicates that they were prepared in anticipation of litigation. Such documents are properly subject to the work product privilege.

This is not a case like *Pfizer*, where defendants alleged that early dates or absent dates on a privilege log undercut plaintiff's work product claims and plaintiff did not rebut those arguments. *Pfizer Inc.*, 2004 WL 2323135, at *3. Here, it is Ineos that has provided no explanation of why documents created in anticipation of Honeywell's price increase in

---

[15] Ineos states that "[w]ork product prepared in the ordinary course of business is not protected from discovery," (Mot. ¶ 17), yet nowhere does it explain how this applies to the documents at issue in Category 6. In fact, these documents were created by or at the direction of Honeywell counsel regarding the risk Ineos might instigate litigation against Honeywell (as, of course, Ineos subsequently did).

December 2005, and the litigation that might flow from it, are not properly subject to the work-product privilege.

## II.    HONEYWELL HAS DEMONSTRATED THE BASES FOR WITHHOLDING OR REDACTING THE DOCUMENTS ON ITS LOGS

Although Ineos's scattershot motion makes it impracticable to explain in detail the basis of the privilege claims for each of the 2854 documents that Ineos challenges on Honeywell's privilege and redaction logs, these documents do fall into three general categories.

First, 1482 of these documents are attorney-client communications that either directly or implicitly ask for legal advice. It is hornbook law that communications made for the purpose of obtaining or giving legal advice are protected by the attorney-client privilege. *See Pfizer*, 2004 WL 2323135, at *2. Of course, a request for legal advice need not be explicit to be privileged. *See Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977) (communications from client to attorney intended to keep attorney apprised of continuing business developments, with an implied request for legal advice based therein, are subject to the attorney-client privilege); *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. 1993) (an implied request for legal advice is privileged to the same extent as an explicit request). At all times relevant to this dispute, it has been Honeywell's practice for in-house attorneys to provide legal advice to the HF business on a daily basis on all aspects of that business. (Graf Aff. ¶ 6.) Of particular relevance here, all HF sales contracts are thoroughly reviewed by in-house attorneys (and sometimes by outside counsel) and frequently undergo numerous internal revisions before being sent outside the corporation. (Graf Aff. ¶ 7.) All such communications clearly fall within the ambit of the attorney-client privilege.[16]    Accordingly,

---

[16]    Correspondence between non-attorneys, on which no attorneys are copied, can reflect privileged attorney-client communications. *See Andritz Sprout-Bauer*, 174 F.R.D. at 633 (communications retain their privileged status if privileged information is relayed to other employees of corporation).

Honeywell was entitled to withhold these communications, or to produce documents that redact these communications. *See In re County of Erie*, 473 F.3d 413, 421 n.8 (2d Cir. 2007) (citing cases that recognize the availability of redaction to protect legal advice in hybrid documents).

Second, 1363 of the documents challenged by Ineos are draft contracts sent among Honeywell lawyers and businesspeople for the purpose of giving or receiving legal advice. Such contracts are protected by the attorney-client privilege. *See Phillips Elecs. N. Am. Corp. v. Universal Elecs., Inc.*, 892 F. Supp. 108, 110 (D. Del. 1995) (drafts of agreements are protected by the attorney-client privilege if they "incorporate facts the client disclosed to counsel in confidence"); *Muller v. Walt Disney Prods.*, 871 F. Supp. 678, 682 (S.D.N.Y. 1994) (preliminary contract drafts that reflect client confidences and the legal advice and opinions of attorneys are protected by the attorney-client privilege). Many of these draft contracts are attachments to privileged e-mail communications and serve the purpose of facilitating communication of advice on the structure and terms of proposed agreements. *See Phillips*, 892 F. Supp. at 110. It is somewhat surprising that Ineos would dispute this principle, as 13 entries on Ineos's privilege log concern documents that Ineos withheld or redacted on the basis that they contain legal advice regarding contract drafts. (Decl. Ex. A Entries 1-10, 22, 40, and 45.)

Finally, the remaining nine documents are draft pleadings, which are squarely within the attorney-client privilege. *See In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (the work-product privilege protects material prepared for trial that may be outside the attorney-client privilege). Again, it would seem odd for Ineos to challenge these documents, as it

---

Indeed, Ineos has claimed attorney-client privilege and/or work-product protection for numerous documents that apparently were not sent to attorneys, including the following documents listed on its privilege log  11-17 (correspondence and documents prepared in anticipation of litigation regarding Honeywell HF contract litigation), 23-25 (same), 30-35 (same), 210-11 (same), 260 (same). (Decl. Ex. A Privilege Log Entries 11-17, 23-25, 30-35, 210-11, and 260.)

withheld from production at least 19 documents that appear to be draft pleadings. (Decl. Ex. A Entries 55, 62, 70, 114, 156, 158, 167, 177, 231, 234, 239, 240, 248, 253, 256, 284, 285, 288, and 303.) Honeywell stands by its privilege claims, and would be glad to submit some or all of these documents for *in camera* review.

### III.    INEOS HAS NO BASIS FOR ITS RADICAL REQUEST THAT HONEYWELL PRODUCE ALL OF ITS PRIVILEGED DOCUMENTS

Ineos's characterization of Honeywell's privilege and redaction logs as "careless" and "haphazard" is demonstrably untrue -- the size of those logs and the details of their entries show the enormous amount of deliberative effort that went into the logs' preparation. The few items that Ineos picks from these logs in an attempt to prop up its claims do not show otherwise. (Mot. ¶ 23.)    With a production of over 66,000 documents, that two documents were misidentified in Honeywell's letters is hardly an error justifying production of all of Honeywell's privileged material.    Similarly, Honeywell's discovery that approximately 0.006 percent of its production was made inadvertently can not seriously be thought to show that its privilege claims were somehow "indiscriminate."[17]  And Honeywell's decision to withdraw some of its privilege claims simply underscores its good faith in working to resolve discovery issues without court intervention.[18]

---

[17]  Indeed, the Protective Order in this case anticipated that the parties might make inadvertent productions, and required counsel "upon the discovery of inadvertent error" to "reasonably cooperate to restore the confidentiality or privileged nature of the information produced."  (Confidentiality Stipulation and Protective Order ¶ 2(c).)  Ineos is well aware of this provision, having invoked it to recall material that it claimed to have produced inadvertently. (Decl. Ex. H.)

[18]  At the risk of stating the obvious, errors can occur in processing large numbers of documents. Indeed, Ineos's own letters to Honeywell contain several such mistakes.  For example, in Ineos's April 25, 2007 letter regarding Honeywell's privilege log, Ineos takes issue with a nonexistent range of entries, "1692-1684" [sic] (Mot. Ex. C Ltr. 1 Attach. at 2), and several times lists the same entry more than once ("1756-1756"; "1755-1756"; "2306-2306"; "2516-2529, 2524, 2527").  (*Id.*)  Ineos also listed an entry, 7981, that Honeywell has assumed was intended to be 4981, since that listing in Ineos's letter follows entry 4979 and precedes entry 4983.  (*Id.* at 3.)  Additionally, in Ineos's April

The cases cited by Ineos do not support its desire to see all of Honeywell's privileged materials. In *LML Patent Corp. v. Telecheck Services, Inc.*, No. 04-858, 2006 WL 839321 (D. Del. Mar. 28, 2006), this Court ordered defendants to produce 260 documents (nothing like the over 10,000 at issue here) but there is no indication that this Court ordered production of all of the defendant's documents. *LML Patent Corp.*, 2006 WL 839321, at *1. In *In re Teleglobe Communications Corp. v. BCE, Inc.*, Nos. 02-11518, 04-1266, 2006 WL 2567880 (D. Del. Jun. 2, 2006), this Court's primary reason for ordering production was that defendants were erroneously relying on a privilege to which they were not entitled. *In re Teleglobe*, 2006 WL 2567880, at *2 (where defendants' counsel provided advice to defendants and plaintiffs on matter of common interest, defendant could not withhold documents from plaintiffs). There is no such issue here. In short, these cases do not support Ineos's demands.

Finally, it is worth noting that at no time did Ineos inform Honeywell that it believed Honeywell had forfeited *all* of its privilege claims. Nor did Ineos ever inform Honeywell that it intended to move to compel production of *all* of Honeywell's privileged and redacted documents. Consequently, the representation by Ineos's counsel that it "made reasonable efforts" under D. Del. LR 7.1.1 to discuss this issue with counsel for Honeywell before asking for this relief is not accurate.

---

27, 2006 letter regarding Honeywell's redaction log, Ineos listed entry 494 twice. (Mot. Ex. C Ltr. 2 Attach. at 1.)

## CONCLUSION

For the reasons stated above, Ineos' motion to compel production of Honeywell's privilege documents should be denied. Should the Court deem it helpful, Honeywell would be glad to submit documents for *in camera* review and/or amend its privilege and redaction logs.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Martin P. Tully (#465)
Jason A. Cincilla (#4232)
1201 North Market Street
P.O. Box 1347
Wilmington, DE19899
(302) 658-9200
   *Attorneys for Defendant Honeywell*
   *International Inc.*

OF COUNSEL:

KIRKLAND & ELLIS LLP
Yosef J. Riemer
Andrew R. Dunlap
Michael D. Reisman
153 East 53rd Street
New York, NY 10022
(212) 446-4800

-and-

Mark L. Kovner
Michael S. Becker
Julie Brennan Jacobs
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005-5793
(202) 879-5000

May 29, 2007

843576.1

## CERTIFICATE OF SERVICE

I, Jason A. Cincilla, Esquire, hereby certify that copies of **Public Version** of **Honeywell's Opposition To Ineos's Motion To Compel Production Of Documents** were served on June 8, 2007 as follows:

### BY ELECTRONIC FILING:

C. Barr Flinn, Esq.
Karen L. Pascale, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899-0391

### BY ELECTRONIC MAIL:

Richard S. Order, Esq.
Axinn, Veltrop & Harkrider LLP
90 State House Square, 11th Floor
Hartford, Connecticut 06103
rso@avhlaw.com

/s/ Jason A. Cincilla
Jason A. Cincilla (#4232)